*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0335P (6th Cir.)
File Name: 03a0335p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                           Nos. 01-1124/2427

JAMES SMITH,
  *Defendant- Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80112—John Feikens, District Judge.

Argued: January 31, 2003

Decided and Filed: July 31, 2003[*]

Before: BATCHELDER, MOORE, and CLAY, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Nancy L. McGunn, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

———————

[*] This decision was originally issued as an "unpublished decision"
filed on July 31, 2003. On August 28, 2003, the court designated the
opinion as one recommended for full-text publication.

1

Jennifer J. Peregord, ASSISTANT UNITED STATES
ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:**
Nancy L. McGunn, Penny R. Beardslee, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.
Jennifer J. Peregord, ASSISTANT UNITED STATES
ATTORNEY, Detroit, Michigan, for Appellee.

———————

**OPINION**

———————

CLAY, Circuit Judge. This is a consolidated appeal. In
Case No. 01-1124, Defendant, James Smith, appeals from the
district court's judgment entered on January 5, 2001,
sentencing Defendant to twenty-one months of imprisonment,
three years of supervised release, and a restitution payment of
$61,774.80 following Defendant's guilty plea conviction for
making false statements to the Social Security Administration
("the SSA") in violation of 18 U.S.C. § 1001. In Case No.
01-2427, Defendant appeals from the district court's order
entered on October 4, 2001, granting the government's
motion to enter a document into the record. For the reasons
set forth below, we **VACATE IN PART** Defendant's
sentence in Case No. 01-1124, we **REVERSE** the district
court's order in Case No. 01-2427, and we **REMAND** both
cases for further proceedings consistent with this opinion.

**BACKGROUND**

The government filed a criminal complaint on February 14,
2000, alleging that Defendant fraudulently collected disability
benefits, totaling $61,744.80, from the SSA using the name
and social security number of Michael C. Johnson from
November of 1995 to January of 2000 in violation of 18
U.S.C. § 641. On the same day the complaint was filed, the
district court issued a warrant for Defendant's arrest.
Defendant turned himself into the United States Marshal
Service on February 24, 2000. Thereafter, on March 15,

2000, the district court dismissed the complaint without prejudice.

The government filed an information on August 16, 2000, charging Defendant with one count of making false statements to the SSA in violation of 18 U.S.C. § 1001. Specifically, the information charged Defendant with knowingly and wilfully making the following false statements: (1) that his name was Michael C. Johnson, (2) that his social security number was identical to Michael C. Johnson's social security number, and (3) that he had never used a different name or social security number. On the same day the information was filed, Defendant filed a waiver of indictment.

At his arraignment held on September 11, 2000, Defendant entered a guilty plea to the information pursuant to a Rule 11 plea agreement. The plea agreement provides in relevant part:

A. . . . The defendant stipulates that all the allegations set forth in the information are true and constitute a violation of the statute.

B. The maximum term of imprisonment shall not exceed twenty-one (21) months.

C. The maximum term of supervised release shall not exceed three (3) years. Violation of any condition of supervised release may result in the defendant being imprisoned for the entire term of supervised release or being prosecuted for contempt of court under 18 U.S.C. § 401(3).

D. The maximum fine shall not exceed the statutory maximum.

E. The court is required to impose a $100 special assessment. The defendant will pay the assessment

before sentence is imposed and will provide a receipt at sentencing.

F. The court can order the defendant to pay restitution for all losses resulting from his relevant offense conduct.

G. The defendant, by entering into this plea agreement, knowingly and voluntarily gives up any right he may have to appeal any sentence which is within the parameters of this agreement as delineated above.

. . . .

J. This agreement incorporates the complete understanding between the parties, and no other promises have been made by the United States Attorney's Office for the Eastern District of Michigan to the defendant or to the attorney for the defendant.

(J.A. at 14-15.) Before accepting Defendant's guilty plea, the district court explained the provisions of the plea agreement to Defendant. The district court then asked Defendant whether he understood the plea agreement, and Defendant replied "Yes, sir." (J.A. at 98.)

The United States Probation Office issued a Presentence Investigation Report ("PSR") on December 18, 2000. The PSR determined that Defendant caused the SSA loss in the amount of $61,744.80, and recommended that Defendant pay restitution in that amount. The PSR also determined that Defendant had a total offense level of 11 and a criminal history category of IV. The PSR therefore recommended a sentencing range of 18 to 24 months of imprisonment.

Defendant filed a sentencing memorandum on December 27, 2000, objecting to, *inter alia*, the PSR's determination of the amount of loss. Defendant argued that had he used his own name and social security number, he could have legally collected $28,064.00 in social security

income benefits from the SSA due to his diagnosed mental illness. Defendant argued that the $28,064.00 in social security income benefits he could have legally collected should be offset against the $61,744.80 in disability benefits he fraudulently collected. Defendant therefore argued that the SSA sustained loss in the amount of $33,710.00, and that he should pay restitution in that amount.

At the sentencing hearing held on January 3, 2001, the government argued that the amount of loss and restitution should equal the amount of disability benefits Defendant fraudulently collected, $61,774.80. The district court agreed and stated that it will order Defendant to pay restitution in the amount of "roughly $61,000." (J.A. at 124.) The district court further stated that it will order the "matter . . . be resolved with the Social Security Administration as to whether or not . . . [the alleged $28,064.00 in social security income benefits Defendant could have legally collected] is a legitimate offset." (J.A. at 125-26.) Defense counsel stated that Defendant would agree to the district court's order if the order specified that the government has the burden of proving Defendant is not entitled to an offset. The district court stated that it was "not going to get involved in a quarrel as to who has the burden of proof." (J.A. at 126.)

The district court entered judgment against Defendant on January 5, 2001, sentencing Defendant to twenty-one months of imprisonment, three years of supervised release, and a restitution payment of $61,774.80. In the judgment, the district court noted:

> Defendant Smith contends that he was legally entitled to receive social security benefits in the amount of $28,064.00 and that this should be off-set against his illegal receipt of $61,774,80. If the Social Security Administration on inquiry of the Office of the United States Attorney for the Eastern District of Michigan agrees with this contention, then this amount of restitution will be reduced by that amount.

(J.A. at 53.) Defendant timely filed a notice of appeal on January 9, 2001, appealing the district court's judgment (Case No. 01-1124).

By letter dated September 5, 2001, the SSA notified the government that it had a policy of not paying social security income benefits retroactively to an individual who, like Defendant, fraudulently collected disability benefits. On September 13, 2001, the government filed a motion to admit the SSA's September 5, 2001 letter into the record pursuant to Federal Rule of Appellate Procedure 10(e)(2). In its motion, the government claimed that it was unaware of the district court's notation in the judgment directing the SSA to resolve the offset dispute until Case No. 01-1124 was on appeal. Defendant filed a response to the government's motion on September 28, 2001. In his response, Defendant objected to the admission of the letter into the record and requested a hearing on the matter. By order entered on October 4, 2001, the district court granted the government's motion without conducting a hearing on the matter. Defendant timely filed a notice of appeal on October 11, 2001, appealing the district court's order (Case No. 01-2427).

## DISCUSSION

### I. WAIVER OF RIGHT TO APPEAL (Case No. 01-1124)

This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*. *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002).

It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement. *See United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001); *Stubbs*, 279 F.3d at 410. For a plea agreement to be constitutionally valid, a defendant must have entered into the agreement knowingly and voluntarily. *See Fleming*, 239 F.3d at 764. "When a [d]efendant waives his

right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." *Stubbs*, 279 F.3d at 410.

In the plea agreement, Defendant agreed to "pay restitution for all losses resulting from his relevant offense conduct," and to "knowingly and voluntarily give[ ] up any right he may have to appeal any sentence which is within the parameters of this agreement[.]" (J.A. at 15.) The government argues that the above-quoted language indicates that Defendant knowingly and voluntarily waived his right to appeal his sentence in any respect. Defendant, on the other hand, argues that he did not knowingly and voluntarily waive his right to appeal the manner in which the district court determined the amount of restitution.

The plea agreement is ambiguous as to the amount and manner of determining restitution. The plea agreement merely provides that the district court can order Defendant to pay restitution for all losses resulting from his relevant offense conduct. The plea agreement, however, does not provide the manner in which the district court can determine the amount of loss. Because Defendant argues on appeal that the district court erred in determining that the SSA sustained a loss in the amount of $61,744.80, the manner in which the district court determined the amount of loss is the primary issue on appeal, which falls outside the scope of the plea agreement. We therefore hold that Defendant's appeal is not waived. *See United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992) (stating that "ambiguity [in a plea agreement] must be construed against the government").

## II. RESTITUTION (Case No. 01-1124)

This Court reviews the propriety of ordering restitution *de novo* and the amount of restitution ordered for abuse of discretion. *United States v. Bearden*, 274 F.3d 1031, 1040 (6th Cir. 2001).

Section 5E1.1 of the Sentencing Guidelines provides in relevant part that "[i]n the case of an identifiable victim, the court shall . . . enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § . . . 3663." United States Sentencing Commission, *Guidelines Manual*, § 5E1.1(a)(1) (Nov. 2002). Section 3663 provides in relevant part that "[t]he court, when sentencing a defendant convicted of an offense under this title [Title 18], . . . may order . . . that the defendant make restitution to any victim of such offense . . . " 18 U.S.C. § 3663(a)(1)(A). Section 3663(a)(3) provides that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

Section 3664 provides in relevant part that "the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a). Section 3664(f)(1)(A) provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Section 3664(e) provides "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

Federal Rule of Criminal Procedure ("Rule") 32(c)(1)[1] provides in relevant part that "[a]t the sentencing hearing . . . [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed. R. Crim. P. 32(c)(1). This Court requires "literal compliance" with Rule 32(c)(1). *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987). This Court has made it clear that Rule 32(c)(1) "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997). USSG § 6A3.1(b) provides that "[t]he court shall resolve disputed sentencing factors at a sentencing hearing in accordance with [Federal] Rule [of Criminal Procedure] 32(c)(1)."

Defendant argues that the district court violated Rule 32(c)(1) by failing to make factual findings regarding the disputed amount of loss sustained by the SSA at the time of sentencing. Defendant points out that the dispute was presented to the district court in the pleadings and at the sentencing hearing. For instance, in his sentencing memorandum, Defendant argued that had he used his own name and social security number, he could have legally collected $28,064.00 in social security income benefits from the SSA due to his diagnosed mental illness. Defendant argued that the $28,064.00 in social security income benefits he could have legally collected should be offset against the $61,744.80 in disability benefits he fraudulently collected. Defendant therefore argued that the SSA sustained a loss in

---

[1] The December 1, 2002 amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3). *United States v. Treadway*, 328 F.3d 878, 885 n.3 (6th Cir. 2003). Because we are reviewing the district court's failure to make specific factual findings at Defendant's sentencing hearing held on January 3, 2001, we are applying the rule in effect at that time–Rule 32(c)(1).

the amount of $33,710.00, and that he should pay restitution in that amount.

At the sentencing hearing, Defendant again presented his argument to the district court. The government responded by arguing that the amount of loss and restitution should equal the amount of disability benefits Defendant fraudulently collected. The district court acknowledged both parties' arguments, but failed to make any factual findings regarding the offset dispute. Rather, the district court stated that it will order Defendant to pay restitution in the amount of "roughly $61,000," and that the "matter . . . be resolved with the Social Security Administration as to whether or not . . . [the alleged $28,064.00 in social security income benefits Defendant could have legally collected] is a legitimate offset." (J.A. at 124, 125-26.) When defense counsel stated that Defendant would agree to the district court's order if the order specified that the government has the burden of proving Defendant is not entitled to an offset, the district court stated that it was "not going to get involved in a quarrel as to who has the burden of proof." (J.A. at 126.)

Thereafter, the district court entered judgment against Defendant sentencing him to pay restitution in the precise amount of disability benefits he fraudulently collected, $61,744.80, as the PSR had recommended. In addition, the district court delegated its duty of resolving the offset dispute to the SSA by noting in the judgment that "[i]f the Social Security Administration on inquiry of the Office of the United States Attorney for the Eastern District of Michigan agrees with . . . [Defendant's] contention, then this amount of restitution will be reduced by . . . [$28,064.00]." (J.A. at 53.)

We hold that the district court violated Rule 32(c)(1) by failing to make factual findings, at the time of sentencing, regarding whether the alleged $28,064.00 in social security income benefits Defendant claims he could have legally collected had he used his own name and social security number should have been offset against the $61,744.80 in

disability benefits Defendant fraudulently collected from the SSA. The district court erred in delegating its duty to resolve the offset dispute to the SSA, and in refusing to respond to Defendant's objection that the government had the burden of proof. We therefore vacate Defendant's sentence as to the amount of restitution and remand this case for resentencing in compliance with Rule 32(c)(1). *See United States v. Monus*, 128 F.3d 376, 396-97 (6th Cir. 1998) (holding that the district court violated Rule 32(c)(1) by failing to make factual findings as to the amount of loss attributed to the defendant); *United States v. Parrott*, 148 F.3d 629, 633 (6th Cir.1998) (holding that a district court cannot adopt "the factual findings of the presentence report without making factual determinations of its own" when the facts are in dispute).

Defendant also argues that the district court violated 18 U.S.C. § 3572(d)(1)[2] by not establishing a restitution payment schedule. We hold that Defendant's argument is without merit. The district court stated in the judgment that Defendant "shall PAY THE BALANCE OF RESTITUTION OWED IN MONTHLY PAYMENTS AS RECOMMENDED BY THE PROBATION DEPARTMENT AND APPROVED BY THE COURT." This Court has approved such payment scheduling. *See Weinberger v. United States*, 268 F.3d 346, 359-60 (6th Cir. 2001).

---

[2]Section 3572(d)(1) provides:

A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments.

18 U.S.C. § 3572(d)(1).

## III. EXPANSION OF THE RECORD

Federal Rule of Appellate Procedure ("Appellate Rule") 10 provides in relevant part:

(a) **Composition of the Record on Appeal**. The following items constitute the record on appeal:
(1) the original papers and exhibits filed in the district court;
(2) the transcript of proceedings, if any; and
(3) a certified copy of the docket entries prepared by the district clerk.
. . . .
(e) **Correction or Modification of the Record**.
. . . .
(2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
(A) on stipulation of the parties;
(B) by the district court before or after the record has been forwarded; or
(C) by the court of appeals.
(3) All other questions as to the form and content of the record must be presented to the court of appeals.

Fed. R. App. P. 10(a) & (e). "The purpose of . . . [Appellate Rule 10(e)(2)] is to allow the [ ] court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *S & E Shipping Corp. v. Chesapeake & O. Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982).

In compliance with the district court's directive as set forth in the judgment, the SSA notified the government, by letter dated September 5, 2001, that it had a policy of not paying social security income benefits retroactively to an individual who, like Defendant, fraudulently collected disability benefits. The government filed a motion to admit the letter

into the record pursuant to Appellate Rule 10(e)(2). In its motion, the government claimed that it was unaware of the district court's directive until Case No. 01-1124 was on appeal. Defendant filed a response to the motion objecting to the admission of the letter into the record and requesting a hearing on the matter. The district court issued a one-page conclusory order admitting the letter into the record, without conducting a hearing on the matter.

Defendant argues that the district court erred in admitting the letter into the record because the letter neither qualifies as a document under Appellate Rule 10(a) nor as an omission under Appellate Rule 10(e)(2). Defendant points out that the letter was not in existence until eight months after the judgment in Case No. 01-1124 was entered on January 5, 2001. Defendant argues that because the letter was not in existence while Case No. 01-1124 was pending before the district court, the district court did not have the right to consider the contents of the letter in finalizing its restitution order.

The government concedes that the letter neither qualifies as a document under Appellate Rule 10(a) nor as an omission under Appellate Rule 10(e)(2). The government, however, argues that we may consider the contents of the letter because it was admitted into the record in direct response to the district court's directive.

Under these circumstances, the district court's decision to admit the letter into the record was plainly unreasonable. The district court neither afforded Defendant the opportunity to respond or comment upon the letter, nor made factual findings regarding the contents of the letter. In addition, the district court violated 18 U.S.C. § 3664(d)(5)[3] by failing to

---

[3] Section 3664(d)(5) provides in relevant part:

If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the

finalize the restitution order within 90 days after sentencing. *See United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000) (holding that the district court erred in unilaterally amending and finalizing the restitution order without affording the parties an opportunity to object within the 90 days after sentencing, as required by § 3664(d)(5)). We therefore vacate the district court's order and remand this case for further proceedings consistent with Rule 32(c)(1) and § 3664(d)(5).

## CONCLUSION

For the forgoing reasons, we **VACATE IN PART** Defendant's sentence in Case No. 01-1124, we **REVERSE** the district court's order in Case No. 01-2427, and we **REMAND** both cases for further proceedings.

---

probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

18 U.S.C. § 3664(d)(5).