**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0201n.06

No. 17-3203

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 18, 2018
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GEORGE RAFIDI,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: GILMAN, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant George Rafidi pleaded guilty to conspiring to commit food-stamp fraud, in violation of 18 U.S.C. § 371. On appeal, Rafidi challenges the district court's restitution order, disputing how the amount was calculated and whether the district court took into account his ability to pay. He also alleges that his lawyer provided ineffective assistance during plea negotiations and at sentencing, and argues that the district court deprived him of the effective assistance of counsel by denying his motion to dismiss and replace his attorney. For the reasons set forth below, we affirm in part and dismiss in part.

I.

Rafidi pleaded guilty pursuant to a written plea agreement. The district court sentenced him to thirty-three months of imprisonment. As part of that sentence, the district court ordered Rafidi to pay, jointly and severally with thirty co-defendants, restitution in the amount of

$2,787,776.06 to the United States Department of Agriculture, Food and Nutrition Services ("USDA").

Rafidi appeals the restitution order even though he waived his right to do so in his plea agreement. "It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763–64 (6th Cir. 2001) (internal quotation marks omitted). Whether a defendant has knowingly and voluntarily agreed to such a waiver is a question that we review de novo. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005).

The appellate-waiver provision in Rafidi's plea agreement provided that he was apprised of his rights "to appeal the conviction or sentence in this case," and that he "expressly and voluntarily waive[d] those rights," with the following three enumerated exceptions:

> (a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court; or (c) the Court's determination of Defendant's Criminal History Category.

Rafidi also preserved the right to pursue ineffective-assistance-of-counsel and prosecutorial-misconduct claims on appeal.

We have repeatedly recognized that restitution is a part of a defendant's sentence. *E.g.*, *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014); *United States v. Gibney*, 519 F.3d 301, 306 (6th Cir. 2008). And we have repeatedly held that waiver provisions like the one at issue here extinguish a defendant's right to appeal a restitution order. *See, e.g.*, *United States v. Sharp*, 442 F.3d 946, 948, 952 (6th Cir. 2006); *Gibney*, 519 F.3d at 306; *see also United States v. Patel*, 577 F. App'x 568, 572 (6th Cir. 2016) (per curiam); *United States v. Reese*, 509 F. App'x 494, 498–99 (6th Cir. 2012).

Rafidi acknowledges that restitution "generally would fall under [the agreement's] very broad waiver provision." But he maintains that this case is the exception because his plea agreement is ambiguous on this point, and therefore a "reasonable person" would not understand that he was waiving his right to appeal restitution specifically. Rafidi relies exclusively on *United States v. Smith* for support, where we held that an appellate waiver did not bar the defendant's appeal of the district court's restitution order. 344 F.3d 479, 483 (6th Cir. 2003). However, the *Smith* defendant waived only his "right . . . to appeal any sentence which [wa]s within the parameters of [the] agreement"—a waiver provision narrower than Rafidi's and one that lacked a finite list of exceptions. *Id.*

Rafidi's reliance on *Smith* is thus misplaced. True, the parties did not agree prior to sentencing on the exact amount of restitution Rafidi owed or on the manner of calculation. But that does not render Rafidi's plea agreement ambiguous with respect to whether restitution was part of his sentence or whether it fell outside the waiver provision. The agreement included restitution in its penalties section, warned that the district court could impose "restitution as a condition of the sentence," and stated that the restitution amount would be determined at sentencing. Moreover, Rafidi "agree[d] to make full restitution as ordered by the Court . . . for the losses caused by [his] relevant conduct," agreed that he had "submitted claims for over $2,000,000 in fraudulently obtained" government benefits, and "agree[d] that the amount of loss sustained . . . was over $2,000,000." The agreement further specified that the parties stipulated to a sixteen-level increase of Rafidi's base offense level because those losses exceeded $1.5 million. As such, the agreement is not ambiguous and we will enforce it as written.

To the extent Rafidi argues that he did not knowingly and voluntarily agree to the appellate waiver, the plea colloquy provides contextual evidence to the contrary. An appellate

waiver "is effective only if understood by the defendant." *See Sharp*, 442 F.3d at 949. Accordingly, Rule 11(b) of the Federal Rules of Criminal Procedure requires that the district court "address the defendant personally in open court . . . [and] inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1), (b)(1)(N).

The district judge complied with the Rule 11 requirements in this case. At the change of plea hearing, she confirmed that Rafidi had signed the agreement and also initialed each page indicating that he had read and understood its contents. In addition, Rafidi acknowledged that he had discussed the agreement with his lawyer; fully understood the agreement's terms; had entered into the agreement knowingly, freely, and voluntarily, and without threats from anyone; and was satisfied with his lawyer's services and legal advice.

Relevant here, Rafidi acknowledged that he was agreeing to pay restitution for the losses caused by his relevant conduct, and that the parties agreed to increase his base offense level to account for those losses. Moreover, the government clarified that it would seek "over $ 2 million" against Rafidi. Turning to the appellate waiver, Rafidi agreed that he was giving up his right to appeal his conviction and sentence except in the limited circumstances listed. The district judge then articulated each exception, none of which encompassed restitution, and twice asked Rafidi whether he understood that those exceptions were the only "items" that he would be permitted to raise on appeal. Rafidi repeatedly stated that he understood. (*See id.*) And his defense counsel concurred. The district court thus properly confirmed Rafidi's understanding of the appellate waiver.

The plea agreement, read as a whole and in light of the plea colloquy, makes clear that restitution was part of Rafidi's sentence and that he knowingly and voluntarily waived any right

to appeal that sentence—with only three exceptions. Rafidi does not explain how the restitution order falls within any of these exceptions. Had Rafidi "wished to reserve his right to appeal the restitution order, he should have negotiated for that right in his plea agreement." *See Sharp*, 442 F.3d at 952. Because the plea agreement reflects no such bargain, we hold that Rafidi has waived this issue. *Cf. Winans*, 748 F.3d at 271–72 (distinguishing *Smith*).

## II.

We also decline to address Rafidi's claim that his lawyer provided ineffective assistance during plea negotiations and at sentencing, even though he reserved his right to appeal on that ground. To prevail, Rafidi must establish that his attorney performed well below the norm of competence in the profession *and* that this deficient performance prejudiced Rafidi's defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review ineffective-assistance claims de novo. *United States v. Ferguson*, 669 F.3d 756, 761 (6th Cir. 2012). But we almost always do so "on collateral review because the record on direct appeal is [often] insufficient to assess" their merits. *United States v. Coleman*, 835 F.3d 606, 612 (6th Cir. 2016) (internal quotation marks omitted). We address an ineffective-assistance claim on direct review "[o]nly in the rare case that would not benefit from further record development." *Id.*

The fact-intensive nature of Rafidi's allegations weighs in favor of applying our general rule. First, Rafidi argues that his lawyer was ineffective by failing to adequately explain the terms of the plea agreement. But Rafidi specifies only one incorrect statement about the terms of the agreement made by defense counsel at a post-plea hearing. This lone assertion provides insufficient insight into the plea-negotiating process and defense counsel's decision-making regarding that process to permit this court to address the merit of Rafidi's incorrect-plea-advice allegation at this time. *See United States v. Levenderis*, 806 F.3d 390, 402 (6th Cir. 2015)

(holding that a "small window into defense counsel's thought process" was insufficient to resolve the defendant's ineffective-assistance claim on direct appeal).

Second, Rafidi argues that his attorney was ineffective at sentencing by not presenting allegedly favorable financial information after promising to obtain such information, and by declining to argue for a concurrent sentence or a downward variance. But there is no affidavit or testimony from defense counsel explaining why he did not present this financial information, assuming he was in fact able to obtain it and it was helpful to Rafidi, or why he made certain arguments at sentencing but not others. *See United States v. Woodruff*, 735 F.3d 445, 451–52 (6th Cir. 2013) (declining to address an ineffective-assistance claim on direct appeal due to the lack of an affidavit or testimony from trial counsel explaining his decision not to object to a certain finding in the defendant's presentence report).

Given the limited record on direct appeal, this court has "no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *See Massaro v. United States*, 538 U.S. 500, 505 (2003). Thus there is no way for us to determine whether, even assuming prejudice, the lawyer's performance fell outside "prevailing professional norms." *See Strickland*, 466 U.S. at 690. Because this is not one of the "rare cases where the error is apparent from the existing record," *see United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006), Rafidi's ineffective assistance claim is more appropriate for a post-conviction motion under 28 U.S.C. § 2255, *see United States v. McCarty*, 628 F.3d 284, 295 (6th Cir. 2010). We therefore decline to address it at this time.

III.

Finally, Rafidi maintains that the district court deprived him of the effective representation of counsel by denying his motion to dismiss and replace his privately retained attorney. We review such a denial for an abuse of discretion and consider "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Benitez v. United States*, 521 F.3d 625, 635 (6th Cir. 2008) (internal quotation marks omitted). At bottom, "where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained." *Id.* at 634.

Rafidi argues that the district judge did not inquire thoroughly enough into his allegations of ineffective representation, but the record belies that claim. At the motion hearing, Rafidi explained that he had difficulty communicating with his lawyer, had no more money to pay him, and that he wanted to challenge the restitution amount at sentencing. When questioned about these concerns by the district court, defense counsel explained that he had met with his client "probably . . . 15 times," with appointments still pending, and was communicating with the government and Rafidi's sons. Moreover, defense counsel acknowledged receiving a retainer, and told the district court that he was "still work[ing] the case" but not charging Rafidi any additional amount. He noted that no other lawyer "kn[ew] this case as well." The government concurred, stating that defense counsel "ha[d] been nothing but professional," and asserting that they had "substantive conversations" about the case, had negotiated a plea agreement beneficial to Rafidi, and were now "looking at restitution."

Defense counsel disclosed that he would challenge restitution at sentencing by trying to distinguish Rafidi's legitimate and illegitimate business transactions. Rafidi responded that his lawyer was not doing enough to ensure that the "figures" used to calculate restitution were "right," and asked for an additional sixty days to communicate with certain financial institutions and thus more fully prepare for sentencing. But the government explained that it would calculate restitution based solely on the amounts the USDA transferred to Rafidi's accounts, not on transactions with private financial institutions.

The district court concluded that Rafidi could certainly fire his lawyer, but there was no reason for the court to remove him because defense counsel had a strategy for challenging the restitution amount, and because the communication between attorney and incarcerated client, although it "might take longer" than if Rafidi was not in custody, was sufficient in this case. The district court then considered Rafidi's eve-of-sentencing request for a continuance, reminding Rafidi that he had previously been granted more time to contemplate his plea agreement. After confirming with Rafidi that another continuance would satisfactorily address his concerns, the district court granted him an additional thirty days to prepare for sentencing.

The district court did not exceed its "broad discretion." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009). The record does not suggest that the disagreement between Rafidi and his counsel over sentencing strategy and communication was "total or irreconcilable," *id.* at 468, "preventing an adequate defense," *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001). And the district court continued sentencing at Rafidi's request. We find no abuse of discretion.

IV.

For these reasons, we affirm the district court's denial of Rafidi's motion for new counsel and dismiss his remaining claims.