NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0106n.06

No. 23-5519

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 08, 2024

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| LARRY EVERETT SMITH, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SILER, NALBANDIAN, and MATHIS, Circuit Judges.

SILER, Circuit Judge. The day Larry Smith reported to prison, he determined that he could not stay. So, he requested compassionate release, claiming that his preexisting medical conditions constituted extraordinary and compelling reasons for his release. He also applied for enrollment in the Bureau of Prisons' (BOP) Residential Drug Abuse Program (RDAP), which could potentially afford him the opportunity for early release. But that program requires a history of substance abuse in the year prior to an applicant's arrest, which Smith did not have. After his entry was denied, Smith claimed that the denial itself presented another extraordinary and compelling reason for his release. The district court disagreed and denied Smith's motion for compassionate release. Smith claims this was an abuse of discretion. Because Smith's medical conditions were exhaustively considered during his sentencing, and because he was never guaranteed entrance to RDAP, we affirm the district court's denial.

Smith also moved to amend his presentence report (PSR) and the district court's statement of reasons to include newly produced evidence of his "extensive history" of substance abuse, so that he could gain enrollment to RDAP. But by the time of his request, Smith was already directly

appealing his sentence. With Smith's direct appeal pending, the district court concluded it did not have jurisdiction to amend his PSR or authority to amend its statement of reasons. We agree.

## I.      Background

### a.      Smith's Guilty Plea, PSR, and Sentencing

Smith and his accomplices deceived thousands of patients and defrauded health insurance providers out of more than $24.9 million. Smith negotiated a plea agreement and pled guilty to a single count of conspiring to commit healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349.

The United States Probation Office prepared Smith's PSR. The PSR discussed his brief and bygone history of substance abuse. It stated that Smith, 52 years old at the time, "admitted he experimented with cocaine and Ecstasy approximately 20 years ago" and "first tried marijuana when he was 25 or 26 years old" but "used marijuana rarely, and his last use occurred in September 2018." He disclosed no history of drug treatment but expressed interest in treatment while in prison. The PSR did not address Smith's alcohol use but noted that he was "exposed to alcohol" as a child. Smith did not object to the PSR's characterization of his substance use or medical conditions. His sentencing memorandum did not mention any history of substance abuse. The letter that he provided from his psychotherapist, from whom he sought mental health counseling, also did not include any reference to substance abuse. Nor did Smith or his counsel mention substance abuse during his sentencing hearing.

Smith's PSR summarized his medical conditions and noted that he was under the care of a cardiologist, gastroenterologist, and psychologist. In his sentencing memorandum and his arguments at his sentencing, Smith discussed his medical conditions at length. Smith requested a non-custodial sentence based on "significant, congenital cardiovascular issues that require regular monitoring," that, in his view, would best be cared for by his existing doctors. He pointed out that

his failing heart valves, last replaced ten or eleven years before his sentencing, would have to be replaced every ten to fifteen years—implying that they would presumably have to be replaced during his sentence.

Following a lengthy review of Smith's medical history, the district court acknowledged Smith's desire for continued care by his preferred providers but concluded that home confinement "would undermine practically every purpose of sentencing."  The district court determined that BOP could provide adequate medical care.

As to substance abuse, the district court "recommend[ed] that [Smith] receive 500 hours of substance abuse treatment from [RDAP]," and although "maybe there's not a strong reason to do that . . . there is some old history of substance abuse . . . [and] you have expressed interest in treatment[.]"  The district court warned Smith that "if [the RDAP officials] determine you don't have a drug problem, they won't let you in the program," but that "if you get in that program and you successfully complete it, you can earn some time off."

The district court calculated Smith's guideline range as 57 to 71 months' imprisonment, but sentenced him to 42 months' imprisonment and three years' supervised release.  Smith appealed the reasonableness of his sentence.  While Smith's appeal was pending, he filed a motion for compassionate release in the district court.  The claims in his motion can be sorted into two separate, but interrelated, areas: substance abuse treatment and medical treatment.

**b.      Smith's Substance Abuse Treatment**

*Smith undergoes two post-sentencing evaluations.*

Ten days after his sentencing, Smith hired a therapist to conduct a Substance Abuse Subtle Screening Inventory.  During the screening, Smith claimed to have drunk twelve to fifteen shots of alcohol in one sitting every three weeks.  He also claimed that he stopped using marijuana after

he was indicted. The therapist determined that Smith had a high probability of having a substance use disorder in the years preceding his arrest and that he required intensive treatment for alcohol and substance use. However, she recommended that he continue his therapy with his current psychotherapist, whose sessions did not center around substance abuse.

Smith also hired a psychologist to conduct a Psychological Evaluation Report regarding his "self-reported symptoms of alcohol abuse." During the evaluation, Smith claimed to have an extensive history of alcohol abuse, which continued after his arrest date. In contrast to both his interviews with the therapist and his probation officer, he told the psychologist that he used marijuana four to six times a week as an adult, and five or six times while on pre-trial release. The psychologist issued his report one week before Smith reported to prison, diagnosing Smith with "[a]lcohol use disorder, severe." He recommended that Smith enroll in an intensive treatment program "such as [a] Residential Drug Abuse Program[.]"

*Smith requests admission to RDAP.*

Smith applied for RDAP the day he reported to prison. BOP deemed Smith ineligible to participate in RDAP because his PSR did not contain information sufficient to establish a pattern of substance abuse during the year before his arrest. Instead, Smith was offered several options, including a nonresidential drug abuse program or other means of verifying his substance abuse. Smith's counsel then sent BOP copies of the therapist's and psychiatrist's post-arrest evaluations, directly and through the Probation Office. BOP deemed the reports unacceptable because they were created after Smith's arrest. *See* Dept. of Justice, BOP Program Statement No. 5330.11, § 2.5.8(2) (requiring documentation "within the 12-month period before the inmate's arrest").

*Smith moves to amend the PSR and statement of reasons to include his alleged substance abuse.*

Next, Smith filed a motion asking the district court to amend the PSR to "fully articulate his long-documented history of drug and alcohol abuse so that he will qualify for RDAP and obtain necessary treatment for his substance abuse disorder." He also asked the court to amend the statement of reasons for its judgment to "effectuate" its previous recommendation that Smith participate in RDAP. Specifically, he asked Probation to supplement the PSR with information concerning his "long-documented" history of substance abuse from his two post-sentencing expert reports, and asked the district court to consider his experts' opinions in its statement of reasons.

Smith filed this motion while the direct appeal of his sentence remained pending. He argued that, under Rule 36 of the Federal Rules of Criminal Procedure, the district court can "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission" at any time. He also argued that BOP's failure to admit him to RDAP constituted a violation of his due process protections.

*The district court denies Smith's motion to amend.*

The district court found otherwise. It denied Smith's motion to amend the PSR and statement of reasons, holding that 1) it lacked jurisdiction to amend the PSR or statement of reasons, as any amendments would alter the underlying facts of Smith's sentence, which Smith was appealing; 2) the proposed amendment was "plainly outside the bounds of Rule 36"; and, 3) even if it had jurisdiction to amend its statement of reasons, it lacked authority to do so, as the proposed amendment "would be an impermissible supplementation of the Court's unexpressed sentencing expectations long after sentencing."

### c. Smith's Medical Treatment

*Smith requests compassionate release.*

The day he reported to prison, Smith asked BOP to seek a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A) or otherwise transfer him to home confinement due to his "significant physical and mental illnesses," noting that he would need an aortic valve replacement. When BOP did not respond to his request within 30 days, Smith filed a motion for compassionate release in the district court. *See* 18 U.S.C. § 3582(c)(1)(A). He provided four grounds for release: 1) his medical issues; 2) his vulnerability to COVID-19, 3) BOP's inadequate treatment of his medical issues, and 4) BOP's inadequate treatment of his substance abuse issues. Smith provided over 700 pages of documents, including reports from three medical experts urging his release.

*Smith receives medical treatment while incarcerated.*

While incarcerated, Smith developed a cough. A week after he reported his cough, the prison clinic diagnosed Smith with bronchitis, prescribed him antibiotics and steroids, and following some tests, referred him to a cardiologist. Smith was hospitalized for five days to undergo testing. He was diagnosed with a "not acute" condition requiring replacement of his aortic valve in the next three to six months, as predicted during his sentencing. Smith consented to a second aortic valve replacement, which was scheduled for the following month.

*Smith amends his motion for compassionate release.*

Following his return from the hospital, Smith again requested that BOP grant him compassionate release. After BOP denied his request, he filed a supplemental motion with the district court. He noted his upcoming surgery and asked to be released so that he could recover at home. Smith also urged the district court to consider two proposed amendments to the sentencing

guidelines, which he argued should reduce his sentence, as "relevant consideration[s]" to his motion.

Smith underwent aortic valve replacement surgery while his motion was pending. He filed a reply asserting that compassionate release was still necessary to prevent complications while he recovered.

*The district court denies Smith's motion for compassionate release.*

The district court denied Smith's motion. It first found that Smith failed to exhaust his claims arising from his valve replacement surgery and declined to review them. It then determined that Smith's medical conditions did not constitute extraordinary and compelling reasons for his release because they existed or were predicted at the time of his sentencing, and because Smith did not show proof that BOP could not manage his conditions. It also noted that Smith's "desire to see his own doctors, on his own terms, is not an extraordinary and compelling reason to warrant his release."

Next, the district court found that Smith's susceptibility to COVID-19 was not an extraordinary and compelling reason for his release because he was fully vaccinated. *See United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc). It then found that Smith's ineligibility for RDAP was not an extraordinary and compelling reason for his release, as the program was never guaranteed to him, and he had the option to receive other forms of substance abuse treatment. In any event, the district court reasoned, the 18 U.S.C. § 3553(a) factors still weighed against Smith's release, as he committed a serious offense, showed "blatant disregard for the law," and only served 9 months of his 42-month sentence. The district court also found it did not have jurisdiction to hear Smith's claims regarding BOP's denial of his admittance to RDAP.

This appeal followed.[1]

## II.     Standard of Review

We review compassionate release decisions for abuse of discretion.  *See United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020).  We review de novo a district court's determination as to whether it has jurisdiction to issue a correction under Rule 36.  *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004).

## III.    Discussion

### a.      Smith's Motion for Compassionate Release

The district court did not abuse its discretion in denying Smith's motion for compassionate release.  Under 18 U.S.C. § 3582(c)(1)(A), a district court may "reduce a defendant's sentence only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant [18 U.S.C.] § 3553(a) factors support the reduction."  *United States v. Hunter,* 12 F.4th 555, 561 (6th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction."  *Id.* at 562.  The district court properly denied Smith's argument because he could not demonstrate any extraordinary and compelling reasons for his release.[2]

---

[1] We affirmed Smith's sentence as procedurally and substantively reasonable in July 2023.  *United States v. Smith*, No. 22-5559, 2023 WL 4703864 (6th Cir. July 24, 2023).

[2] Both the government and Smith spend much time arguing about whether we should require issue-specific exhaustion for 18 U.S.C. § 3582(c)(1)(A) motions for compassionate release.  But we need not reach that argument, as Smith's motion was meritless.

*Medical Conditions:* Smith argues that his medical conditions—specifically his cardiac conditions—could be better managed outside of custody and required his release. However, Smith raised these same arguments during his sentencing, where the district court considered them and treated them as mitigating factors, and then determined that BOP had sufficient facilities and resources for his treatment—including his likely valve replacement surgery. These facts therefore existed during sentencing, and 18 U.S.C. § 3582(c)(1)(A) "precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.'" *Hunter*, 12 F.4th at 569. The only material change in Smith's condition since his incarceration has been his valve replacement surgery. Because that surgery was anticipated, he has not shown that his medical condition has "changed after sentencing in a way that is 'extraordinary and compelling[.]'" *Id.*

Smith also argues that BOP failed to provide him with adequate medical treatment. But as the district court pointed out, Smith has presented no evidence that BOP cannot manage his conditions. He received a valve replacement from a private hospital after a long-term, long-anticipated deterioration. And while Smith was treated for bronchitis one week after he first reported a cough, the government points out that such a gap in treatment was akin to, if not shorter than, the care Smith received outside of prison for similar bronchitis diagnoses and treatments following coughs. Smith asserts that he would prefer to recover from his May 2023 surgery at home, where he can have his choice of providers. But as the district court found, Smith's "desire to see his own doctors, on his own terms, is not an extraordinary and compelling reason warranting his release."

*COVID-19:* The district court did not abuse its discretion in finding that Smith's susceptibility to COVID-19 is not an extraordinary and compelling reason warranting his release

because he has previously received COVID-19 vaccinations and does not claim that he does not have access to booster shots. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

*Denial of RDAP:* The district court properly determined that Smith's denial of admission into RDAP was not an extraordinary and compelling reason warranting his release because RDAP was not guaranteed to him and was not a condition of his incarceration. After the district court recommended that Smith participate in RDAP, BOP had the authority to approve or deny his enrollment. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can recommend that the BOP place an offender in a particular facility or program. . . . But decisionmaking authority rests with the BOP." (emphasis removed)). Furthermore, substance abuse treatment is still available to Smith through outpatient programs.

*Sentencing Guidelines Amendment:* Smith argues that Amendment 821 to the Sentencing Guidelines, effective November 1, 2023, and effective retroactively February 1, 2024, supports his release. *See* Press Release, U.S. Sentencing Commission, U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces Its Next Set of Policy Priorities (Aug. 24, 2023), https://www.ussc.gov/about/news/press-releases/august-24-2023. The amendment was not effective as of Smith's May 2022 sentencing or the district court's May 2023 denial of his motion for compassionate release.[3]

---

[3] Smith re-raised his reduction motion to the district court under 18 U.S.C. § 3582(c)(2). The district court granted in part Smith's motion and reduced his sentence from 42 months to 35 months imprisonment.

*The 18 U.S.C. § 3553(a) Factors:* Because Smith failed to show an extraordinary and compelling reason warranting a reduction, the district court and this court need not consider the application of the § 3553(a) factors. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions when any of the three prerequisites . . . is lacking and do not need to address the others.").

But, for the sake of thoroughness: The district court did not abuse its "considerable discretion" in determining that the § 3553(a) factors did not support Smith's compassionate release. *See United States v. Overmeyer*, 663 F.3d 862, 864 (6th Cir. 2011). In its denial of Smith's motion for compassionate release, the district court discussed Smith's health conditions, medical treatment, ability to care for himself, susceptibility to COVID-19, substance abuse treatment options, non-violent offense, and good behavior. It weighed those factors against the seriousness of Smith's $24.9 million healthcare fraud scheme, his "blatant disregard for the law," and the fact that he had only served 9 months of his 3.5-year sentence. The district court concluded that any reduction in Smith's sentence "would not reflect the seriousness of his offense, promote respect for the law, afford adequate deterrence, or adequately protect the public from future crimes."

Smith complains that the district court focused on the seriousness of his offense and brevity of his time in prison, rather than his medical issues, and alleges that the court "refus[ed] to consider [his] present medical condition and the level of care provided by BOP." The district court's nearly ten-page analysis of Smith's medical conditions and treatment suggests otherwise.[4] Regardless,

---

[4] We also note that, because Judge Greer both sentenced Smith and considered Smith's motion for compassionate release, he already considered and balanced the § 3553(a) factors "the first time around"—so, even "even a barebones form order could have sufficed" in denying Smith's motion for compassionate release. *United States v. Keefer*, 832 F. App'x 359, 363-64 (6th Cir. 2020) (internal quotations omitted).

"[b]ecause [Smith's] argument ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently, it is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2010) (internal quotations omitted).

**b.      Smith's Motion to Amend his PSR and Statement of Reasons**

When Smith directly appealed his sentence, this court took jurisdiction over every aspect of his case having to do with his sentence—including his PSR and statement of reasons. When he then moved to amend his PSR and statement of reasons, the district court properly determined that it did not have jurisdiction or authority to make such amendments.

"Subject to very few exceptions, the filing of a notice of appeal shifts from the district court to the court of appeals adjudicatory authority over any aspect of the case . . . involved in the appeal." *United States v. Carman*, 933 F.3d 614, 615 (6th Cir. 2019). While the district court retains "limited jurisdiction to take actions in aid of the appeal," *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013) (internal quotations omitted), it cannot take "actions that alter the case on appeal." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003) (internal quotations omitted).[5]

Smith sought to add two expert reports concerning his substance abuse, among other alterations, to his sentencing record. He repeatedly insists, without further explanation, that these

---

[5] For example, some appellate courts allow district courts to use this exception to memorialize oral opinions in the days after a decision was rendered, even if a party has already filed a notice of appeal. Such action would be considered "in aid of the appeal." *See Inland Bulk Transfer Co.*, 332 F.3d at 1013 (compiling cases).

amendments would "not impact the merits of his appeal." His argument is contradictory. When Smith directly appealed his sentence, he asked this court to consider whether his sentence was reasonable based on the facts in the record. So, we were tasked with examining, among other factors, the content of Smith's PSR, his "personal history, character," and his "medical conditions" to determine whether his sentence was reasonable. *See Smith*, 2023 WL 4703864 at *3-4. While we were considering that appeal, Smith asked the district court to amend his sentencing record to add evidence of severe substance abuse—a critical component of both his personal history and his medical condition. In other words, Smith asked the district court to alter the merits of his sentencing while, at the same time, he asked us to examine those very same merits. The district court did not have jurisdiction to make such alterations. *See United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984) ("It is well settled that the filing of the notice of appeal with the district court clerk deprives the district court of jurisdiction to act in matters involving the merits of the appeal.").[6]

### c. Smith's Due Process and Eighth Amendment claims

Smith claims that his inability to participate in RDAP violates his Eighth Amendment protections against cruel and unusual punishment and his due process rights. By refusing him RDAP, Smith claims, BOP is refusing him a potential one-year sentence reduction, which he equates with substantive unfairness and an unconstitutionally cruel and unusual punishment.

---

[6] Smith insists that a district court's ability to alter a PSR with an appeal pending is an issue of first impression in the Sixth Circuit. While this may technically be the case, our law is clear: once an appeal is pending, district courts cannot take actions that alter the case on appeal. *See Inland Bulk Transfer Co.*, 332 F.3d at 1013.

The district court found it did not have jurisdiction to hear these claims because ineligibility from RDAP should be challenged through a 28 U.S.C. § 2241 petition in the jurisdiction where the prisoner is being held. Smith failed to respond to this finding in his appellant brief, and instead only restated it without argument. It is impossible to tell whether he even disagrees that the district court lacks jurisdiction. Because Smith failed to present any argument, he forfeited this claim. *See United States v. Layne*, 192 F.3d 556, 556-67 (6th Cir. 1999) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[.]") (internal quotations omitted).

Regardless of Smith's forfeiture, his arguments are as meritless as they are conclusory. First, regarding Smith's due process challenge: BOP has discretion to determine which prisoners are eligible to participate in an RDAP. *See* 18 U.S.C. § 3621(e)(5)(B); *see also Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("A prisoner has no constitutional right to participate in RDAP . . . and similarly, a prisoner has no liberty interest in discretionary early release for completion of RDAP[.]") (citation omitted).

Second, regarding his Eighth Amendment challenge: Smith was not denied treatment. He was denied entry to RDAP, a residential treatment program. Smith can seek treatment through BOP's nonresidential substance abuse programs and does not explain why these would be unacceptable.

Finally, even if Smith had been admitted into RDAP, BOP would not have been obligated to reduce his sentence. *United States v. Smith*, 474 F.3d 888, 895 (6th Cir. 2007) ("Even if a defendant completes [RDAP], the BOP does not have to reduce the sentence.") (citing 18 U.S.C. § 3621(e)(2)(B)). Because Smith was denied neither treatment nor a sentence reduction, and because he cannot challenge his denial of RDAP in this court, his argument is meritless.

### IV.     Smith's Motion to Take Judicial Notice or Supplement the Record

On the day his reply was due, Smith asked us to take judicial notice of, or supplement the record with, 300 pages of "medical and institutional information" he alleges were made available after the district court's order.  His motion is largely a rehashing of his appellate argument, and centers around the significance of the content of these documents.  The government took no position on this motion.  We deny Smith's motion for four reasons.

First, Smith is not truly asking us to take judicial notice of the records, as "courts do not take judicial notice of documents, they take judicial notice of facts."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020).  Rather, Smith is "asking us to take judicial notice of the contents of these documents for the truth of the matters they assert."  This is a motion to supplement the record and will be evaluated as such.  *Id.*

Second, the documents are inappropriate for supplementation on appeal.  Federal Rule of Appellate Procedure 10(e)(2) allows for the correction of omissions or misstatements in the records caused by error or accident.  It does not permit the introduction of "new evidence in the court of appeals," which is exactly what Smith proposes to do.  *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005) (quoting *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003)); *Inland Bulk Transfer Co.*, 332 F.3d at 1012.  Smith asserts, without argument, that these documents cannot reasonably be disputed.  But even if we were to assume that the parties do not dispute the existence of the records, there would likely be "considerable dispute over the significance of [their] contents," given the fact that Smith's motion for compassionate release concerns his medical condition.  *United States v. Bonds*, 12 F.3d 540, 553 (6th Cir. 1993).  Indeed, Smith argues that the documents show that his "overall health continues to worsen in BOP custody."  Supplementing the record with these documents would go beyond correcting omissions or misstatements.  *Id.*; *see*

*also United States v. Husein*, 478 F.3d 318, 337 (6th Cir. 2007) (declining to supplement the record with documents of disputed significance).  We decline to do so.

Third, many of the 300 pages of documents are dated before the district court's order denying Smith's motion for compassionate release.  Smith does not explain when the records became available to him or why he delayed in submitting them. "Permitting [Smith] to supplement the record on appeal with information that [he] could have easily obtained much earlier would not advance the interests of justice and would not further efficient use of judicial resources." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 477–78 (6th Cir. 2008).

Finally and perplexingly, Smith did not substantively cite any of these many documents in his reply brief, other than to support his assertion that he has not received a COVID-19 booster this year.  Even if we were to allow the record to be supplemented, the impact on Smith's argument would be negligible.

Smith's motion to take judicial notice is **DENIED** and the district court's order denying compassionate release is **AFFIRMED.**