*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0376p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 06-5848

SEAN WILLIAM LEE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 05-20120—J. Daniel Breen, District Judge.

Argued: June 6, 2007

Decided and Filed: September 13, 2007

Before: MARTIN, BATCHELDER, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Kemper B. Durand, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Kemper B. Durand, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellant. Dan L. Newsom, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined. BATCHELDER, J. (pp. 5-6), delivered a separate dissenting opinion.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Defendant Sean William Lee pled guilty to using a computer and telephone for purposes of persuading a minor to engage in sexual acts, in violation of 18 U.S.C. § 2422(b). Lee was sentenced to 188 months' imprisonment, to be followed by supervised release for life. Lee was ordered to comply with several conditions of release. One of these conditions, which he challenges in this appeal, is the requirement that he participate in a specialized sex offender treatment program that may include the use of a penile plethysmograph. For the reasons that follow, we decline to review the conditions of Lee's supervised release at this time.

I.

Between January 12, 2005 and March 20, 2005, the then 35-year-old Lee used an instant messenger program on his home computer in Memphis, Tennessee to contact an individual he believed to be a 13-year-old female living with her parents in Mississippi. The individual Lee contacted was actually an undercover Federal Bureau of Investigation agent representing herself as a 13-year-old female. Lee contacted the agent numerous times over instant messenger, telephone, and cellular telephone. Lee also used a webcam to transmit an image of his face to the agent. Their telephone communications, which were recorded, revealed that Lee spoke with the agent about engaging in sexual activity with her, specifically oral sex and masturbation. On March 20, 2005, Lee had one final internet communication with the agent and then left his home in his truck to travel down to Mississippi to meet her. While en route, he called the agent on his cellular telephone. When Lee arrived at the apartment complex where the intended victim supposedly lived, he was placed under arrest.

Lee was charged with one count of using a computer and telephone for purposes of persuading a minor to engage in sexual acts in violation of 18 U.S.C. § 2422(b), one count of traveling in interstate commerce for the purpose of engaging in a sexual act with a minor in violation of 18 U.S.C. § 2423(b), and one count of forfeiture allegations under 18 U.S.C. §2253.

On December 12, 2005, Lee pled guilty to the first count and consented to the forfeiture contained in the third count. The government agreed to dismiss the second count of the indictment. Section 2422(b) provides for a mandatory term of imprisonment for not less than five years and not more than thirty years, and a period of supervised release of any term of years to life. As part of his plea agreement, Lee agreed to the following waiver of appeal:

> I understand that Title 18, United States Code, Section 3742 gives me the right to appeal the sentence imposed by the Court. Acknowledging this, I knowingly and voluntarily waive my right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as my sentence is within the statutory maximum specified above. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating directly to this waiver of appellate rights or to its negotiation *that also* involve the involuntariness of my plea, prosecutorial misconduct, or ineffective assistance of counsel.

Joint App'x at 29 (underlining in original).

Lee was sentenced while the 2005 version of the United States Sentencing Guidelines ("Guidelines") was in effect. According to the Presentencing Report ("PSR"), under the Guidelines, Lee received a base offense level of 24 for violating section 2422(b) and a two-point increase for using a computer "to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct." Joint App'x at 146. Lee received a two-point reduction for acceptance of responsibility, bringing his offense level back down to 24. Lee then received a ten-point enhancement as a repeat and dangerous sex offender against minors, and another two-point reduction for acceptance of responsibility, resulting in a total offense level of 32. Lee was assigned a criminal history category of V, which when paired with his total offense level provided for a Guidelines range of 188 to 235 months' imprisonment. Lee's sentencing hearing was held on June 14, 2006. The district court sentenced Lee to 188 months' imprisonment, to be followed by supervised release for life with several conditions. At the hearing, the district judge informed Lee that one of these conditions was that upon release, "he must participate in a specialized sex offender

treatment program that may include the use of plethysmograph or polygraph."[1]  Joint App'x at 133-34.  Defense counsel did not object to this condition.

On appeal, Lee challenges the potential imposition of a penile plethysmograph as a condition of his supervised release.  Specifically, Lee contends that the district court imposed this condition without notice to the defense and an opportunity for a hearing.  Although the waiver of appeal may arguably foreclose his appeal, because this case possibly implicates ineffective assistance by his counsel, we will entertain his appeal.  *Cf. In re Acosta*, 480 F.3d 421 (6th Cir. 2007).

## II.

First, we must briefly address the issue of prior notice.  Lee's appellate counsel—who was not his counsel at trial—claims that the defense was not given notice prior to sentencing of the potential use of plethysmograph testing as a condition of Lee's term of supervised release.  Lee's appellate brief states that the PSR "contained a confidential recommendation section which was not shared with the defense."  Appellant's Br. at 15.  Appellate counsel also believes that the PSR's recommendation was not shared with the Assistant United States Attorney who handled his case.

However, contrary to Lee's assertion, his trial counsel was in fact given prior notice of this condition in the PSR.  The PSR provides a list of special conditions of supervised release, among which is condition #2, which states: "The defendant must participate in a specialized sex offender treatment program that may include use of a plethysmograph and polygraph."  Joint App'x at 160.  Nothing in the record indicates that this portion of the PSR was kept from Lee or the government.  When appellate counsel was pointed to this section of the PSR at oral argument, he conceded that it was in fact part of the record below, and that he must have simply overlooked it when preparing Lee's appeal.  Therefore, while perhaps Lee *himself* was never informed of this recommendation, it is now clear that it was in the record.  Thus, there is no basis for relief on this ground.

## III.

This Court has held that conditions of supervised release may be ripe for appellate review immediately following their imposition at sentence.  *See United States v. Wilson*, 172 F.3d 50, 1998 WL 939987, at *2 (6th Cir. Dec. 22, 1998) (unpublished) (holding that the defendant's appeal of special conditions of supervised release to be imposed after his twelve-month prison sentence, which included discretionary use of plethysmograph testing, was ripe for review).  But here, we believe that Lee's rights will be better served if his appeal is preserved until after he is released from prison.  Therefore, we hold that the condition of supervised release that he challenges is not yet ripe for review.  *See United States v. Littleton*, 103 F.3d 131, 1996 WL 694162, at *4-5 (6th Cir. Dec. 3, 1996) (unpublished) (declining to address conditions of the defendant's supervised release, which included a plethysmography test, that would follow his thirty-six month sentence); *cf. United States v. Worthington*, 145 F.3d 1335, 1998 WL 279379, at *17 & n.4 (6th Cir. May 21, 1998) (unpublished).

---

[1] "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'"  *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders*, 14 TEMP. POL. & CIV. RTS. L. REV. 1, 2 (2004)).  More detail on how this testing works is explained in *Weber* at 561-62.  "Courts have previously recognized that plethysmograph testing 'can [be] help[ful] in the treatment and monitoring of sex offenders.'"  *Id.* at 562 (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000)).

There are two reasons why we hold that Lee's claim is not yet ripe. First, there is no guarantee that Lee will ever be subject to plethysmograph testing. Notably, the condition implicates only the *potential* use of a penile plethysmograph. *See* Joint App'x at 133-34 ("[Lee] must participate in a specialized sex offender treatment program that *may* include the use of plethysmograph or polygraph.") (emphasis added); *see also* Joint App'x at 160 (PSR). In addition, Lee will not be released from prison until 2021 — fourteen years from now. Lee will be fifty-one years old and will have served over fifteen years in prison, during which time he will likely receive sex offender treatment. We have no idea whether the Probation Office will determine that such treatment will be necessary at that time. In fact, this arguably presents a more compelling case for dismissal on ripeness grounds than *Littleton*, where the defendant was sentenced to slightly more than one-fifth of the time that Lee must serve. *Cf. Wilson*, 1998 WL 939987, at \*2 (holding that defendant's claim was ripe where he faced only a twelve-month prison sentence). Thus, given that the occasion may never arise, Lee's contention that he will actually be subject to penile plethysmograph testing is mere conjecture. *Cf. United States v. Shoenborn*, 4 F.3d 1424, 1434 (7th Cir. 1993) ("[T]his court does not render decisions in hypothetical cases.").

Our second reason for finding that Lee's claim is unripe is the fact that it is unclear whether, by the year 2021, penile pelthysmograph testing will still be used. As a few of our sister circuits have noted, penile plethysmogrpah testing implicates significant liberty interests, and further, its reliability is questionable. *See Weber*, 451 F.3d at 562, 564 (explaining that plethysmograph testing is "not a run-of-the-mill medical procedure," and that studies have shown that results may be unreliable); *Coleman v. Dretke*, 395 F.3d 216, 223 (5th Cir. 2004) (concluding that the "highly invasive nature" of the test implicates significant liberty interests); *Harrington v. Almy*, 977 F.2d 37, 44 (1st Cir. 1992) ("There has been no showing regarding [plethysmography]'s reliability and, in light of other psychological evaluative tools available, there has been no demonstration that other less intrusive means of obtaining the relevant information are not sufficient."); *cf. United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir. 1995) (holding that the trial court did not abuse its discretion when it did not allow plethysmogrpah test results to be admitted as evidence due to the test's failure to satisfy the "scientific validity" prong of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

We cannot speculate on what will happen by 2021 with respect to penile plethysmograph testing. For example, by then, the test may be held to violate due process rights. Or, its reliability will have been debunked. Or, perhaps a less intrusive test will have replaced it. In light of these possibilities, we simply do not know whether Lee will ever be forced to submit to plethysmograph testing, and therefore, we hold that his claim is not yet ripe. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (explaining that an unripe claim is one that involves "contingent future events that may not occur as anticipated, or indeed may not occur at all") (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)).

IV.

When Lee's claim is ripe, he may request that the district court modify his conditions of supervised release pursuant to 18 U.S.C. § 3583(e). At that time, the district court can determine whether these conditions—and in particular, the use of a penile plethysmograph—"involve[] no greater deprivation of liberty than is reasonably necessary" to deter future criminal conduct, protect the public, and provide Lee with needed training or treatment. 18 U.S.C. § 3583(d)(2). If he is displeased with the district court's decision, he may appeal to this Court.

For the foregoing reasons, we decline to review Lee's claim at this time. Therefore, his appeal is dismissed without prejudice.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. The majority opinion, relying almost exclusively on unpublished case law, dismisses this appeal without prejudice, holding that Lee's challenge to certain conditions of his supervised release is not ripe for appellate review. This conclusion implies that we might one day have jurisdiction to hear these claims, but, in my opinion, this court will never have jurisdiction over Lee's challenge to conditions of his supervised release, as it is clear that he has waived his right to assert these claims on appeal. I would therefore dismiss Lee's claims with prejudice.

"It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001). "When a defendant waives his right to appeal his sentence in a valid plea agreement, this [c]ourt is bound by that agreement and will not review the sentence except in limited circumstances." *Smith*, 344 F.3d at 483 (alteration omitted).

Lee's plea agreement included a waiver of most of his appellate rights, stating:

> I understand that [18 U.S.C. § 3742] gives me the right to appeal the sentence imposed by the Court. Acknowledging this, I knowingly and voluntarily waive my right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as my sentence is within the statutory maximum specified [in this Plea Agreement]. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims relating directly to this waiver of appellate rights or to its negotiation *that also* involve the involuntariness of my plea, prosecutorial misconduct, or ineffective assistance of counsel.

This waiver clearly forecloses Lee's claims on appeal. Lee waived his right to appeal "any sentence . . . and the manner in which the sentence is determined so long as [the] sentence is within the statutory maximum." The district court sentenced Lee to 188 months' imprisonment, which is much less than the 360-month maximum authorized by statute. And Lee now contests "the manner in which the sentence is determined," arguing that "[t]he district court may not impose nonstandard conditions of supervised release without notice to the defense and without a meaningful hearing as to those conditions." Because Lee's sentence does not exceed the statutory maximum, and because he is challenging the "manner" in which the district court determined his sentence (i.e., the alleged lack of notice and lack of a meaningful hearing), I would hold that the waiver in the plea agreement bars Lee from asserting these arguments on appeal. Furthermore, while the waiver in the plea agreement explicitly disclaims applicability to certain claims, Lee's claims on appeal do not fall within any of these exceptions. His claims, even under the broadest of readings, do not "relat[e] directly to []his waiver of appellate rights" or "involve the involuntariness of [his] plea, prosecutorial misconduct, or ineffective assistance of counsel." I therefore conclude that Lee's claims are not excluded from the waiver of appellate rights in the plea agreement and, for the foregoing reasons, would dismiss this appeal with prejudice.

I am unpersuaded by the majority's elevation of, and total dependence upon, the phrase "within the statutory maximum" in Lee's waiver. The entire provision containing that phrase states, "I knowingly and voluntarily waive my right to appeal any sentence imposed by the Court and the manner in which the sentence is determined so long as my sentence is within the statutory maximum

specified [in this Plea Agreement]." When this language is viewed as a whole, it is clear to me that Lee waived his right to appeal any portion of his sentence, which includes the terms and conditions of supervised release. The majority ignores the express statement that Lee "waive[d] [his] right to appeal *any sentence* imposed by the [c]ourt." Because Lee waived his right to appeal any sentence, and because his sentence, like those of most other defendants, included a term of supervised release, his waiver encompasses his right to challenge the terms of that supervised release. I thus dissent from the judgment for the reasons expressed herein.