In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3953

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRUCE J. RHODES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 94—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 23, 2008—DECIDED JANUARY 13, 2009

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Bruce Rhodes pled guilty to knowingly possessing a computer hard drive containing video depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4). The court sentenced Rhodes to a ten-year term of imprisonment followed by a life term of supervised release. The court imposed several special conditions of supervised release, and Rhodes now challenges just a portion of one

condition—penile plethysmograph testing (known as "PPG" in medical circles)—which he finds particularly invasive for reasons that will be evident when this procedure is described below.

## I. Background

In January 2007, Rhodes's then-girlfriend reported to police that she had discovered videos on Rhodes's computer that she thought contained child pornography. Police obtained a warrant and seized Rhodes's computer. Forensic examination of the computer revealed pictures and videos containing children engaged in sexually explicit acts. Rhodes admitted to downloading and viewing child pornography. A grand jury returned a single-count indictment of knowingly possessing a computer hard drive containing video depictions of a minor engaging in sexually explicit conduct, to which Rhodes pled guilty.

In sentencing Rhodes, the district court noted that Rhodes had a prior conviction for third-degree sexual assault. The conviction arose from his having sexual intercourse with a thirteen-year-old girl, a charge to which he pled no-contest in a Wisconsin state court in 2000. Based on that conviction, the court found that the mandatory statutory enhancement under 18 U.S.C. § 2252(b)(2) applied, which set the minimum term of imprisonment at ten years and the maximum at twenty years. The court also calculated the advisory sentencing range under the U.S. Sentencing Guidelines. Rhodes had an offense level of 26 and a criminal history category of IV, which placed him in the advisory range of 92 to 115

months' imprisonment. The court noted that the statute mandated a minimum sentence that was greater than the advisory range and sentenced Rhodes to ten years' imprisonment, which was to run consecutively to the sentence imposed in the Wisconsin state court for the violation of his term of extended supervision. The imprisonment was to be followed by a life term of supervised release subject to the mandatory and standard conditions. *See* U.S.S.G. § 5D1.3. The court also found that nine special conditions were appropriate. The condition at issue stated that Rhodes was to "undergo a psychosexual evaluation and participate in an outpatient sex offender counseling program if recommended by the evaluator which may involve use of polygraph and plethysmograph examinations." Rhodes's attorney made a brief and unadorned objection to this condition on general Fifth Amendment grounds.

In explaining the propriety of the sentence, the court expressed that, in light of Rhodes's previous conviction, his possession of more than 150 images and videos containing child pornography suggested that he had a "dangerous attraction to children." The court noted that his possession of a computer was in violation of a condition of his state supervision. He also previously had the opportunity to participate in treatment while under state supervision, but he admitted that his attitude had interfered with treatment. The court found that his actions created a risk that he would commit additional criminal acts, placing the community—especially children—in jeopardy. Rhodes now appeals the above-mentioned special condition.

## II. Discussion

Penile plethysmograph testing is a procedure that "involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders*, 14 TEMP. POL. & CIV. RTS. L. REV. 1, 2 (2004). The use of PPG testing "has become rather routine in adult sexual offender treatment programs," *United States v. Weber*, 451 F.3d 552, 562 (9th Cir. 2006), and courts have upheld conditions requiring offenders to undergo PPG testing under various legal challenges. *See* Odeshoo, *supra*, at 20 n.151-52 (collecting cases).

Though the use of PPG is not uncommon, experts disagree as to its effectiveness. "The reliability and validity of this procedure in clinical assessment have not been well established, and clinical experience suggests that subjects can simulate response by manipulating mental images." AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 567 (4th ed., text revision 2000); *see also* Dean Tong, *The Penile Plethysmograph, Abel Assessment for Sexual Interest, and MSI-II: Are They Speaking the Same Language?*, 35 AM. J. OF FAM. THERAPY, 187, 190 (2007) ("The PPG, when administered properly, represents a direct and objective measurement of a man's level of sexual arousal to normal versus sexualized stimuli. Since there is a strong relationship between an individual's pattern of sexual arousal

and the probability that he may or will act upon that arousal, an important first step in gauging one's propensity to sexual deviancy is to obtain an accurate assessment of that person's sexual arousal patterns, which is precisely what the PPG does."); James M. Peters, *Assessment and Treatment of Sex Offenders: What Attorneys Need to Know*, ADVOCATE, Dec. 1999, at 23 (1999) (PPG "is invaluable in the evaluation, treatment and management of known sexual offenders."); John Matthew Fabian, *The Risky Business of Conducting Risk Assessments for Those Already Civilly Committed as Sexually Violent Predators*, 32 WM. MITCHELL L. REV. 81, 101 (2005) ("[S]ome evaluators believe that polygraph and [PPG] testing are unreliable and invalid, and thus should be prohibited because such data may lead to false positives, suggesting that an offender will reoffend when he ultimately does not."); Odeshoo, *supra*, at 43 ("Why, given the fact that PPG is more expensive, more time-consuming, more intrusive and degrading, and not demonstrably more reliable than the polygraph, would authorities nonetheless insist that sex offenders submit to PPG examinations?").

The district court imposed a special condition of supervised release that first requires a psychosexual evaluation, which could then lead to mandatory participation in a sex offender treatment program. As part of such a program, Rhodes could be required to undergo polygraph and PPG testing. Rhodes objected "for the record" on Fifth Amendment grounds without elaboration. On appeal, he argues that because PPG testing implicates a significant liberty interest, the district court should be required to state that the condition "involves no greater

deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). Rhodes concedes that our standard of review at this stage is from the narrow perspective of plain error because he did not object to the condition on the same grounds that he raises in this appeal. *United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008).

A district court has the discretion to impose special conditions of supervised release if the condition: (1) is reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to provide adequate deterrence to criminal conduct, protect the public, and rehabilitate the defendant; (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes of deterrence, public protection, and rehabilitation; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. §§ 3553(a), 3583(d). When crafting a defendant's sentence, the district court is not required to address each factor "in checklist fashion, explicitly articulating its conclusion for each factor," as long as the court's statement of reasons is adequate and consistent with the factors. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 728 (7th Cir. 2008). Because PPG testing is mentally and physically intrusive, Rhodes urges us to follow the Ninth Circuit's approach in *United States v. Weber*, 451 F.3d 552 (9th Cir. 2006) and require the district court to state precisely why the PPG testing is no greater deprivation of liberty than is reasonably necessary. In determining that a special procedure is warranted before PPG testing can be imposed, the Ninth Circuit noted that a number of less intrusive alter-

natives exist for treating sex offenders. *Id.* at 567-68. The court declined to say "categorically that . . . plethysmograph testing can never reasonably promote at least one, if not all three, of the relevant goals laid out in § 3553(a)(2)—namely, deterrence, public protection, and rehabilitation." *Id.* at 566.

The government, on the other hand, asks that we follow the Sixth Circuit's approach in *United States v. Lee*, 502 F.3d 447 (6th Cir. 2007) and dismiss the claim as unripe. In *Lee*, the district court imposed the condition that upon release, the defendant "must participate in a specialized sex offender treatment program that may include the use of plethysmograph or polygraph." *Id.* at 449. The Sixth Circuit held the claim was not ripe for two reasons. First, the condition only *potentially* required the defendant to have PPG testing. *Id.* at 450. The defendant would not be released from prison for fourteen years, and the court could not predict whether the probation office would, in fact, find the testing necessary for the defendant's treatment at that time. *Id.* "[G]iven that the occasion may never arise, Lee's contention that he will actually be subject to penile plethysmograph testing is mere conjecture." *Id.* Second, the court noted that it was unclear whether PPG testing would still be used for evaluation or treatment by the time the defendant was released from prison, since PPG testing "implicates significant liberty interests, and further, its reliability is questionable." *Id.*

We find the Sixth Circuit's reasoning persuasive and consistent with our approach in *United States v. Schoenborn*,

4 F.3d 1424 (7th Cir. 1993). In *Schoenborn*, the defendant was sentenced to imprisonment for five years, the statutory maximum term, followed by supervised release for three years, also the statutory maximum term. The defendant argued that any violation of his supervised release, "say for missing an appointment with his probation officer or for drinking a beer," could result in additional jail time exceeding the statutory maximum. *Id.* at 1434. We held that the claim was not ripe. *Id.* "One who invokes the jurisdiction of a federal court must establish, before all else, that he has suffered a concrete and particularized injury; a conjectural one will not do." *Id.*

As in *Lee* and *Schoenborn*, Rhodes's claim is based on a number of contingencies. He was sentenced to ten years of imprisonment, consecutive to the term imposed by the state court due to Rhodes's violation of extended supervision for his 2000 conviction. His term of supervision will begin only after his release from imprisonment (which could not be sooner than eight and one-half years after he enters the federal prison system upon the completion of his Wisconsin sentence, assuming that he gains full credit for satisfactory behavior pursuant to 18 U.S.C. § 3624(b)). Only then could an evaluator recommend that he participate in an outpatient sex offender counseling program. And even if the evaluator were to recommend a treatment program, PPG testing will not necessarily be required. Perhaps the counselor and the Probation Officer responsible for this case may determine that testing would not be efficient, effective, economical, or necessary, or perhaps they would be satisfied with polygraph testing alone, which is not unusual. As the

condition is stated, there is a fair amount of discretion regarding the techniques to be utilized. In the meantime, the development of science or the law may render the PPG testing irrelevant or even illegal, or maybe the movement will be in a different direction altogether—a lot can happen in the better part of a decade. Were we to instead move at this time to follow *Weber* and hold that the district court had to state why PPG was preferable to less intrusive methods for this particular defendant, we would be addressing a question full of contingency and abstraction founded in an evolving scientific field, perhaps to the detriment of the defendant's rehabilitation—and doing so with an undeveloped trial court record. Experts already disagree as to which evaluation and treatment methods are the most effective, and we would do well to await a more concrete presentation of this issue.

Regardless, Rhodes can later petition the district court to modify the condition. *Lee*, 502 F.3d at 451; 18 U.S.C. § 3583(e)(2); *see also* Fed. R. Crim. P. 32.1(c). Through such a petition, he could initially present the district court with the up-to-date scientific and legal criticisms of PPG, rather than saving such a presentation for an appellate brief. We acknowledge Rhodes's concern, as he colorfully describes it, that if the district court created a condition that he go over Niagara Falls in a barrel, he should be permitted to challenge it before he plummets over the edge. Indeed, if Rhodes were to be ordered to undergo PPG testing, he could be faced with undergoing the testing (or the alternative of violating the condition of supervised release) before his request to modify was considered by the district court. We think under those

circumstances, Rhodes should be permitted to have the district court consider his request to modify the condition before he is required to undergo the testing. But he is nowhere near such a crest in the supervised release process.

This is not to say that a defendant can never immediately appeal a condition of supervised release after sentencing. We have entertained such appeals on countless occasions. A few examples—in *United States v. Ross*, 475 F.3d 871, 875 (7th Cir. 2007), we considered a defendant's appeal of a supervised release condition that he participate in sex offender evaluation and treatment. In *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003), we addressed a defendant's appeal of a supervised release condition prohibiting him from using the Internet entirely. In *United States v. Paul*, 542 F.3d 596, 600-01 (7th Cir. 2008), we considered a defendant's appeal of a supervised release condition that he submit to drug testing. In *United States v. Schave*, 186 F.3d 839, 841-43 (7th Cir. 1999), we considered the defendant's appeal of supervised release conditions prohibiting him from drinking alcohol and associating with white supremacy groups.

In each of these cases, the defendant was sentenced to several years' imprisonment before the challenged terms of supervision commenced, yet we analyzed the propriety of the challenged supervised release conditions at the front end of those sentences. The conditions in each of those cases were determinate, however: Ross was required to participate in sex offender evaluation

and treatment, Paul was subject to drug testing, Schave could not drink alcohol or associate with white supremacy groups, and Holm could not use the Internet—all with unqualified certainty. Rhodes, on the other hand, may only be affected by the condition after a string of contingencies—he must complete his prison terms, his evaluator must recommend that he undergo a sex offender counseling program, and the program must include PPG testing. Therein lies the difference.

### III. Conclusion

Because Rhodes's special condition will only become effective after he serves more than ten years' imprisonment and several other conditions are met, we DISMISS his claim without prejudice as unripe.