NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0081n.06

No. 18-4240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROY ALLEN NICHOLS,

    Defendant-Appellant.

FILED
Feb 04, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    DAUGHTREY, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Roy Allen Nichols appeals the judgment of the district court sentencing him to 235 months' imprisonment following his conviction for one count of receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Nichols argues that his sentence is procedurally unreasonable because the district court wrongly applied a five-level sentence enhancement, pursuant to U.S.S.G. § 2G2.2(b)(5), on the basis that Nichols had engaged in a pattern of activity involving sexual abuse or exploitation of a minor. He further contends that the district court's imposition of a special condition of supervised release requiring him to submit to periodic polygraph testing at the discretion of his probation officer is procedurally and substantively unreasonable.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**FACTUAL BACKGROUND**

In 2018, Nichols pleaded guilty to receiving and distributing visual depictions of minors engaged in sexually explicit conduct using the means and facilities of interstate commerce, in violation of 18 U.S.C. § 2252(a)(2). At his change of plea hearing, Nichols admitted that he shared child pornography involving "the lascivious display of genitals and vaginal rape of prepubescent and even toddler females" through a peer-to-peer file-sharing program on June 27, August 6, and August 13, 2017. (Change of Plea Hr'g Tr., R. 37 at PageID #496, 498.) A government search of Nichols' cell phone and laptop following their seizure uncovered child pornography depicting incestuous and sadomasochistic sex acts being performed on toddlers and prepubescent minors.

In preparation for Nichols' sentencing hearing, his probation officer prepared a presentence investigation report ("PSR"). Nichols' PSR describes his long history of sexually abusing minors. Nichols did not object to the PSR's presentation of these facts before the district court and does not contest their accuracy on appeal.

The narrative laid out in the PSR begins in 1982, when nineteen-year-old Nichols was found exposing his genitals to a seven-year-old girl, whose pants had been unfastened. No police report was filed about this incident, and Nichols was not convicted of any offense related to this conduct. However, Nichols subsequently admitted to authorities that, at age nineteen, he had molested a seven-year-old child in a bathroom and, specifically, performed oral sex on her.

Ten years later, in 1992, Nichols was reported to the police after offering a candy bar to a child in an attempt to lure the child from a public park into the woods. No charges were filed about this incident.

Later that year, then-thirty-year-old Nichols pleaded guilty to child enticement under Ohio law. According to a parole violation report and police report summarized in the PSR, Nichols

abducted two children, who later told authorities that Nichols had repeatedly offered them car rides in exchange for money. During one such car ride, Nichols touched a male child on the stomach. Upon arrest for his current offense, Nichols admitted to investigating police officers that he had "lured [the] children into his vehicle for purposes of sexual gratification," but denied that he touched the children inappropriately. (Final PSR, R. 21 at PageID #89.)

In 1998, the police inventoried Nichols' vehicle when he was stopped after a vehicle pursuit. In the process, the officers found pictures of minors "in various stages of dress," with genitals and sexually explicit phrases scrawled on some of them. (*Id.* at #90.) The PSR does not report any conviction related to this conduct.

The next year, Nichols was reported to the police after attempting to rape a thirteen-year-old. The PSR summarizes a police report indicating that then-thirty-six-year-old Nichols "attempted sexual intercourse with a 13-year-old female while she [w]as asleep. The victim was able to fight him off, but she reported the defendant ejaculated onto her shirt and the couch." (*Id.*) The PSR also does not report any convictions related to this conduct.

A police report from 2005 summarized in the PSR states that, following his release from prison for an unrelated offense, Nichols admitted several more instances of child sexual abuse to his post-release supervising officer. According to that report, Nichols admitted to having intercourse with his seven-year-old mentally challenged stepsister at age fourteen, having intercourse with a thirteen-year-old girl when he was twenty-three, and having "sexual contact with all of his sister's children, his sister's neighbor's children, and all of his father's children after his father re-married." (*Id.*) The PSR later discusses a presentence report prepared in 2006. At that time, Nichols admitted that he had intercourse with his mentally challenged stepsister when she

was nine years old and he was thirteen or fourteen years old. The PSR does not report convictions related to any of this conduct.

In 2006, Nichols pleaded guilty to multiple counts of pandering sexually oriented matter involving a minor under Ohio law. Investigations of this offense suggest Nichols possessed pornographic images of infants and children between the ages of four and eight and traded child pornography with between 100 and 150 individuals. After being released from prison following this offense, Nichols' supervising officer received a report that while in prison, Nichols "approached other inmates and showed pictures of an 8-year-old's vagina. Defendant Nichols allegedly told them how to molest young children without getting caught or how to dispose of the body if they decided to kill them." (*Id.* at #91.) Nichols violated his parole following this offense four times, evidently by viewing or possessing child pornography in February 2011, December 2011, and November 2012 and, in March 2015, using a computer in violation of his terms of release in order to visit dating sites.

After summarizing Nichols' history, the PSR detailed its recommended sentencing calculations. Among other things, it recommended applying the five-level enhancement at issue on appeal, because Nichols had "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." (*Id.* at #94 (citing U.S.S.G. § 2G2.2(b)(5)).) The PSR indicated that it applied that enhancement because:

> Defendant Nichols has a prior conviction of Child Enticement from 1992 and Pandering Sexually Oriented Matter Involving a Minor (five counts) from 2006. . . . [D]efendant admitted to the past sexual contact with multiple minor children to a supervising officer in 2005. Also, the defendant violated the terms of his supervised release for the Pandering Sexually Oriented Matter Involving a Minor on four occasions between 2010 and 2015 for continued inappropriate sexual behavior.

(*Id.*)

Before his sentencing hearing, Nichols objected to the PSR's calculations based on the application of the five-level pattern-of-activity enhancement. Specifically, he argued—as he did in his briefing on appeal—that the enhancement was wrongly based on his convictions for child enticement and pandering sexually oriented matter involving a minor, as those convictions do not constitute sexual abuse or exploitation of a minor. The probation officer replied that Nichols "admitted to the past sexual contact with multiple minor children to a supervising officer in 2005" and "violated the terms of his supervised release for the Pandering Sexually Oriented Matter Involving a Minor on four occasions between 2010 and 2015 for continued inappropriate sexual behavior, as verified by police reports." (*Id.* at #118.)

Nichols reiterated this objection to the pattern-of-activity enhancement at his sentencing hearing. The district court overruled the objection, implying that in doing so it "accept[ed] the Government's contention and the probation officer's conclusion" in the PSR and finding that "the weight of authority amply supports the five-point enhancement." (Sent'g Hr'g Tr., R. 38 at PageID #510, 512; *see also id.* at #512 ("I do agree with the government.").)

The court then imposed a 235-month sentence, varying downward from Nichols' identified Guidelines range of 292 to 365 months' imprisonment. It discussed the 18 U.S.C. § 3553(a) factors. In doing so, it found that Nichols had demonstrated that he was "incapable of not succumbing to the temptation to endanger and injure young children," and said that prior defendants it had sentenced did not have "the history that [Nichols] did of repeated — starting 40 some years ago — of abusing, molesting, sexually attacking young children, enticing young children, trying to lure them into your van to do God knows what." (*Id.* at #530–31.) The court noted its intent to incapacitate Nichols, while allowing him the possibility of reentry post-incarceration, subject to strict conditions.

The court imposed as a special condition of supervised release periodic polygraph testing at the discretion of Nichols' probation officer, explaining that it believed "that would be necessary and that may be a mechanism in determining whether [Nichols] has re-offended or undertaken to re-offend." (*Id.* at #519.) It noted that this condition would contribute "to protect[ing] children," should Nichols ever be released from prison. (*Id.* at #531.) Finally, in Nichols' sentencing order, the court asserted that this condition was "a means to ensure that [Nichols is] in compliance with the requirements of [his] supervision or treatment program." (Sent'g Order, R. 25 at PageID #448.) It stated that it expected polygraphs "to be implemented at least weekly for whatever period the probation officer thought was important," (Sent'g Hr'g Tr., R. 38 at PageID #531), but it did not include any limitations on the officer's discretion to order polygraphs in its sentencing order, (Sent'g Order, R. 25 at PageID #448.)

The court then asked whether there were any further objections from the parties, pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Nichols made no further objections.

Nichols' timely appeal followed.

## DISCUSSION

### I.      Pattern-of-Activity Enhancement

Nichols has objected to the district court's application of the pattern-of-activity enhancement at every opportunity—in the PSR, at his sentencing hearing, and now before this Court. *See United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019) ("To preserve challenges to procedural sentencing errors for appeal and avoid plain error review, a defendant generally must raise his objection during the sentencing proceeding."). Because Nichols has properly preserved this procedural-reasonableness challenge, we review it for an abuse of discretion. *United States v.*

*Davis*, 751 F.3d 769, 773 (6th Cir. 2014). In doing so, we review the district court's legal determinations *de novo* and its factual findings for clear error. *Id.*

A sentence is procedurally reasonable if the sentencing court "committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Nichols asserts that the district court wrongly calculated his Guidelines range because it applied the five-level pattern-of-activity enhancement.

In his appellate briefing, Nichols specifically contends that the district court erroneously relied on his prior state convictions for child enticement and pandering sexually oriented matter involving a minor in applying the pattern-of-activity enhancement. He argues that the conduct involved in the former crime "fails to satisfy the requirements for a 'sexual abuse or exploitation' crime." (Def. Br. at 12; Def. Reply Br. at 4.) He contends that the latter crime was not sexual abuse or exploitation because trafficking in child pornography is excluded from the definition of "sexual abuse or exploitation" under the Commentary to U.S.S.G. § 2G2.2. The government responds that Nichols' "enhancement was based on more than just his prior convictions"—it was also based on his admissions to his supervising officer that he engaged in sexual contact with multiple minor children and his violations of parole following his conviction for pandering sexually oriented matter. (Gov't Br. at 17–18.) At oral argument, Nichols asserted—for the first time—that the district court erred by failing to find that he had committed the unconvicted offenses detailed in the PSR by a preponderance of the evidence. At no point has Nichols argued that he did not commit these offenses or that the conduct underlying these offenses does not qualify as sexual abuse or exploitation of a minor.

To assess whether the district court correctly applied the pattern-of-activity enhancement, we must first determine what offenses the district court relied upon in applying that enhancement. In this case, that is a difficult determination to make, as the district court did not clearly explain its rationale for applying the enhancement. Instead, it merely implied that it "accept[ed] the Government's contention and the probation officer's conclusion" and stated that the "weight of authority amply supports the five-point enhancement." (Sent'g Hr'g Tr., R. 38 at PageID #510, 512; *see also id.* at #512 ("I do agree with the government.").) This explanation leaves unclear whether the district court found that factual authority suggested Nichols had committed enough offenses to apply that enhancement or that legal authority supported the application of the pattern-of-activity enhancement based on the offenses Nichols contested.

A sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). It is procedural error if a court "fail[s] to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. Specifically, a district court must "explain[] its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Trejo-Martinez*, 482 F.3d 409, 412–13 (6th Cir. 2007). Accordingly, a court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988)). At a minimum, Federal Rule of Criminal Procedure 32(i)(3)(B) requires a court to explicitly rule on "any disputed portion of the presentence report or other controverted matter." Fed. R. Crim. P. 32(i)(3)(B). "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however," a court should ordinarily "explain why [it] has rejected those arguments." *Rita*, 551 U.S. at 357.

This precedent suggests that a district court must explicitly rule on whether a contested sentence enhancement applies and, in doing so, should provide some meaningful explanation of its reasons for applying that enhancement. While the district court made the required explicit ruling in this case, *see* Fed. R. Crim. P. 32(i)(3)(B), its explanation of that ruling was far from satisfactory. In fact, this case presents a paradigmatic example of why a district court should explain the rationale for its application of the pattern-of-activity enhancement—without a more thorough explanation, we are left to infer what offenses the district court relied upon in applying that enhancement. Ordinarily, we look to the district court's articulation of the facts relied upon to assess whether the pattern-of-activity enhancement was correctly applied. *See, e.g.*, *United States v. Hammond*, 637 F. App'x 897, 903 (6th Cir. 2016); *United States v. Pirosko*, 787 F.3d 358, 373 (6th Cir. 2015); *United States v. Gerick*, 568 F. App'x 405, 413 (6th Cir. 2014); *Davis*, 751 F.3d at 778. In this case, the record's only indication of what facts the district court relied upon is the court's suggestion that it agreed with the government and, by overruling Nichols' objection to the pattern-of-activity enhancement, it would be accepting the recommendations put forward by the government and the probation officer in the PSR.

In the absence of any additional explanation, we thus look to the offenses relied upon by the government and the PSR that the district court apparently accepted. The PSR and the government referred to several instances of conduct in recommending application of the enhancement. The PSR relied upon Nichols' 1992 child-enticement conviction; his 2006 pandering-sexually-oriented-matter conviction; his admissions of prior sexual misconduct in 2005, namely his statements that he had intercourse with his stepsister, had intercourse with a thirteen-year-old when he was twenty-three, and had sexual contact with his sister's children, his sister's neighbor's children, and his father's children; and his four violations of his terms of supervised

release between 2010 and 2015. The government's sentencing memorandum also pointed to the 1982 report that then-nineteen-year-old Nichols had performed oral sex on a seven-year-old and the 1999 report that then-thirty-six-year-old Nichols had attempted to rape a sleeping thirteen-year-old.

The offenses relied upon by the government and the PSR—and therefore, we assume, by the district court—are a combination of convicted state offenses and unconvicted prior conduct detailed in the PSR. A court may properly rely on both state convictions and unconvicted conduct in applying the pattern-of-activity enhancement. *See* U.S.S.G. § 2G2.2(b)(5) & cmt. n.1.

At oral argument, Nichols newly argued that the district court was required to explicitly find that he had committed these unconvicted offenses by a preponderance of the evidence. It bears noting that arguments asserted for the first time at oral argument are waived. *E.g.*, *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("Generally speaking, . . . a party does not preserve an argument by raising it for the first time at oral argument . . . .") (citation omitted). Nevertheless, we think it appropriate to address this issue. While the district court did not explicitly state that it adopted the factual findings put forward in the PSR, it suggested that it was accepting the probation officer's conclusions in the PSR when it overruled Nichols' objection to the pattern-of-activity enhancement. To be sure, if Nichols had challenged the accuracy of the facts as presented in the PSR, the district court would be required to explicitly find that Nichols had committed the relevant conduct. *See* Fed. R. Crim. P. 32(i)(3)(B). But Nichols made no such objection. In fact, in addressing the applicability of the pattern-of-activity enhancement at the sentencing hearing, Nichols' counsel acknowledged that "[he does] recognize and Mr. Nichols recognizes that these things did occur by his own admission." (Sent'g Hr'g Tr., R. 38 at PageID #516–17.)

A court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). What's more, a district court is entitled to rely on even disputed facts if the defendant "fails to produce any evidence to contradict the facts set forth in the PSR." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) (citing *United States v. Duckro*, 466 F.3d 438, 449 (6th Cir. 2006); *United States v. Lang*, 333 F.3d 678, 682 (6th Cir. 2003)); *see also, e.g.*, *Hammond*, 637 F. App'x at 902. The district court was thus entitled to rely upon Nichols' admitted conduct in considering the applicability of the pattern-of-activity enhancement.

We next consider whether the district court could properly treat these instances of conduct as part of a "pattern of activity involving the sexual abuse or exploitation of a minor," based on which Nichols is subject to the pattern-of-activity enhancement. *See* U.S.S.G. § 2G2.2(b)(5) & cmt. n.1. The Guidelines define "pattern of activity involving the sexual abuse or exploitation of a minor" to mean "any combination of two or more separate instances" of such abuse or exploitation, whether or not the instances "(A) occurred during the course of the [current] offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2 cmt. n.1. "Sexual abuse or exploitation" is defined to include conduct described in any of nine federal statutes, state-law offenses that would have qualified as offenses under those federal statutes had they occurred within a federal jurisdiction, or an attempt or conspiracy to commit any of these offenses. *Id.* The definition explicitly excludes "possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.*

Of the enumerated federal offenses, 18 U.S.C. §§ 2241, 2243, and 2422 are most relevant here. Specifically, § 2241 describes the offense of aggravated sexual abuse, which includes actual or attempted sexual acts with minors under age twelve. 18 U.S.C. § 2241(c). Section 2243 describes sexual abuse of a minor or ward, which includes, among other things, actual or attempted

sex acts with minors over age twelve but under age sixteen when the minor is four or more years younger than the offender. 18 U.S.C. § 2243(a).[1] Finally, § 2422 describes the offense of coercion and enticement, which may include "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] any individual who has not attained the age of 18 years old to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so." 18 U.S.C. § 2422(b).

In assessing whether a defendant's offenses qualify as sexual abuse or exploitation of a minor, this Court considers whether a defendant's underlying conduct would constitute an enumerated federal offense. *See, e.g.*, *United States v. Doutt*, 926 F.3d 244, 246–47 (6th Cir. 2019); *Hammond*, 637 F. App'x at 900–01, 903. We thus turn to assess whether each of the government and the PSR's identified offenses meet this test. Applying that test confirms that, while multiple of Nichols' prior offenses do not qualify as sexual abuse or exploitation of a minor, at least four of his admitted unconvicted offenses do so qualify.

First, it is unclear whether Nichols' 1992 child enticement conviction qualifies as an instance of sexual abuse or exploitation of a minor. As previously discussed, 18 U.S.C. § 2422 establishes that actually persuading or attempting to persuade a minor to engage in criminal sexual activity is a violation of federal law. *See* 18 U.S.C. § 2422(b); *see also* U.S.S.G. § 2G2.2 cmt. n. 1

---

[1] For each of these offenses, "sexual act" is defined to include:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

(defining "sexual abuse or exploitation" to include a violation of § 2422). According to the PSR, Nichols himself admitted that he "lured [the] children into his vehicle for purposes of sexual gratification." (Final PSR, R. 21 at PageID #89.) However, no facts presented at sentencing— including in the PSR—address what sort of "sexual gratification" Nichols sought, (*see id.* at #89, 98), and if that included "any sexual activity for which any person can be charged with a criminal offense," 18 U.S.C. § 2422(b). *See, e.g.*, *United States v. Jones*, 747 F. App'x 348, 359 (6th Cir. 2018) (declining to find sexual abuse or exploitation of a minor based on offenses "involv[ing] questions of fact that the district court clearly did not resolve during the initial sentencing hearing" and which would be dispositive as to whether sexual abuse or exploitation had occurred). Similarly, nothing in the record clarifies the ages of the children Nichols was found to have enticed, a fact that has significant bearing on what crime, if any, Nichols could be found to have committed. *See, e.g.*, *Doutt*, 926 F.3d at 247–48 (finding error in application of the pattern-of-activity enhancement based on the defendant's sexual activity with a minor where there was insufficient evidence to confirm victim's age and allow finding that the perpetrator was at least four years older than the victim, as required for 18 U.S.C. § 2243(a) violation). In the absence of such evidence, the district court did not have a sufficient basis to conclude that Nichols' child-enticement conviction qualified as sexual abuse or exploitation. Accordingly, it erred in relying on that conviction.

The record is more definitive as to Nichols' convictions for pandering sexually oriented matter involving a minor. Those offenses do not qualify as sexual abuse or exploitation under U.S.S.G. § 2G2.2(b)(5), as the conduct that those convictions are based upon involved, at most, "possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n.1. Such conduct is explicitly excluded

from the definition of "sexual abuse or exploitation" under the Guidelines. *See* U.S.S.G. § 2G2.2 cmt. n.1. Therefore, the district court also erred in relying on those convictions.

However, the district court properly relied on multiple of Nichols' unconvicted prior offenses in finding a pattern of activity. Nichols' admitted performance of oral sex on a seven-year-old child and his admitted intercourse with his stepsister both qualify as sexual abuse or exploitation because they constitute "conduct described in" at least 18 U.S.C. § 2241. U.S.S.G. § 2G2.2 cmt. n.1 (listing a violation of § 2241 as an instance of "sexual abuse or exploitation"). That statute criminalizes "knowingly engag[ing]" or attempting to engage in a sexual act with a child under the age of twelve, thus covering his conduct with both the seven-year-old and his stepsister, whether she was seven or nine at the time. 18 U.S.C. § 2241(c). "Sexual act" is defined to include oral, vaginal, and anal sex, again covering the conduct involved in both offenses. *See* 18 U.S.C. § 2246(2). The district court thus correctly relied upon this conduct.

Likewise, Nichols' admitted intercourse with a thirteen-year-old when he was twenty-three and his attempted rape of a thirteen-year-old when he was thirty-six would also qualify as sexual abuse or exploitation. These offenses are "conduct described in" at least 18 U.S.C. § 2243, which criminalizes actual or attempted sex acts with minors over age twelve but under sixteen when the minor is four or more years younger than the offender. 18 U.S.C. § 2243(a); U.S.S.G. § 2G2.2 cmt. n.1 (listing a violation of § 2243 as an instance of "sexual abuse or exploitation"). The district court could also properly rely on this conduct.

While other acts described by the government and in the PSR may also qualify as sexual abuse or exploitation under U.S.S.G. § 2G2.2(b)(5), the district court had insufficient grounds to find so. Nichols also "admit[ted] to the molestation of his nieces and nephews" to a parole officer and told an officer in the Lima Police Department that he "had sexual contact with all of his sister's

children, his sister's neighbor's children, and all of his father's children after his father re-married."

(Final PSR, R. 21 at PageID #90.) However, absent additional detail, including the ages of the

children and the contact in question, the facts described in the PSR are not sufficient to find that

these acts were necessarily sexual abuse or exploitation within the meaning of U.S.S.G.

§ 2G2.2(b)(5). *See, e.g.*, *Doutt*, 926 F.3d at 247–48; *Jones*, 74 F. App'x at 359. Similarly, the

district court had insufficient evidence that any of Nichols' parole violations involved any conduct

that would violate an enumerated federal statute. As presented in the PSR, those violations

involved only viewing child pornography and using a computer to visit dating sites. The former of

these acts is explicitly excluded from the definition of "sexual abuse or exploitation," and the latter

is not covered by any of the enumerated offenses listed in that definition. U.S.S.G. § 2G2.2 cmt.

n.1.

Thus, the district court could properly find a pattern of activity involving the sexual abuse

or exploitation of a minor based on at least four of Nichols' prior acts. Specifically, the district

court properly relied upon Nichols' attempted rape of a thirteen-year-old at age thirty-six and his

admissions that he performed oral sex on a seven-year-old child, had intercourse with his

stepsister, and had intercourse with a thirteen-year-old when he was twenty-three. U.S.S.G.

§ 2G2.2 establishes that "any combination of two or more separate instances" of sexual abuse or

exploitation constitutes a pattern of activity, and so Nichols' admitted conduct is more than

sufficient to show a pattern of activity. U.S.S.G. § 2G2.2(b)(5).

However, the district court erred to the extent that it applied the pattern-of-activity

enhancement based on Nichols' convictions for child enticement and pandering sexually oriented

matter involving a minor; his parole violations; and his admitted molestation of his nieces and

nephews, his father's children, and his sister's neighbor's children. Still, even if we find procedural

error, we must consider the impact of that error. "[A] remand for an error at sentencing is required unless we are certain that any such error was harmless—*i.e.*[,] any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Where an error is harmless, this Court need not remand for resentencing. *Davis*, 751 F.3d at 773.

This case presents a prime example of why sentencing courts should ground their rulings as to the applicability of a controverted sentence enhancement in the specific facts of the case and the applicable law. Still, despite the district court's manifest failure to do so, in the unique circumstances of this case, Nichols' admitted and still-uncontroverted history of sexual abuse and exploitation of minors is extensive and egregious enough that we are convinced that the pattern-of-activity enhancement would apply even if the district court had not relied upon non-qualifying prior offenses. Nichols has admitted to at least four prior offenses that definitively qualify as sexual abuse or exploitation of a minor. He did not challenge the accuracy of the facts underlying the PSR's account of his history before the district court, and any challenge of those facts has now been waived. Moreover, unlike in previous cases where we have remanded to the district court to resolve issues of fact that may impact whether a defendant could be found to have committed two or more instances of sexual abuse or exploitation, *see Jones*, 747 F. App'x at 359, Nichols' history includes at least two instances of sexual abuse or exploitation under any possible version of the facts.

Accordingly, even if we were to remand to the district court to correct Nichols' asserted error, that court would have no basis on which to find that Nichols had not committed enough qualifying conduct to merit the application of the pattern-of-activity enhancement. The district court "agree[d] with the government" and evidently accepted the probation officer's conclusions

in the PSR when it overruled Nichols' objection to the pattern-of-activity enhancement. (Sent'g Hr'g Tr., R. 38 at PageID #510, 512.) There is no reason for it to change its conclusion that the enhancement applied on remand. Furthermore, its finding that Nichols had a history "starting 40 some years ago — of abusing, molesting, sexually attacking young children, enticing young children, trying to lure them into your van to do God knows what" suggests it would have applied that enhancement even if it had not looked to Nichols' non-qualifying offenses. (*Id.* at #531.) Because the district court's error did not affect its decision to apply the pattern-of-activity enhancement, *Hazelwood*, 398 F.3d at 801, we affirm its application of that enhancement.

## II.     Polygraph Condition of Supervised Release

We turn now to Nichols' challenge to the district court's imposition of periodic polygraph testing as a special condition of supervised release. As a prudential matter, we must first assess whether this claim is ripe for our review. Notably, neither party acknowledged or argued the issue of ripeness on appeal; still, we may consider the issue on our own motion, and we do so here. *See, e.g.*, *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006). Conditions of supervised release are ordinarily ripe for appellate review immediately following sentencing. *United States v. Lee*, 502 F.3d 447, 449–50 (6th Cir. 2007). However, "[r]ipeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). Thus, this Court has refused to consider challenges to conditions of supervised release that are imposed at a third party's discretion, that follow a long prison sentence, and that involve evolving technologies, on the basis that those challenges are not ripe for review. *E.g.*, *United States v. Evers*, 669 F.3d 645, 661–62 (6th Cir. 2012); *Lee*, 502 F.3d at 449–51; *see also United States v. Massey*, 349 F. App'x 64, 69–70 (6th Cir. 2009). Nichols' claim is closely analogous to challenges mounted in those cases.

In *United States v. Evers*, this Court rejected a defendant's challenge to several special conditions of supervised release, including sex offender treatment using polygraph and plethysmograph testing.[2] 669 F.3d at 662. The Court reasoned that the defendant's challenge was "premature in light of the 235-month sentence that he has yet to serve, the leeway afforded the probation department in tailoring many of these special conditions, and the resultant contingencies that may or may not come to fruition." *Id.* It further noted that "[a]t this point in time, it would be speculative and 'mere conjecture for this Court to try to define the parameters of [the defendant's] future supervised release conditions.'" *Id.* (quoting *Massey*, 349 F. App'x at 70). Finally, it concluded that the defendant's rights "will be better served if his appeal is preserved until after he is released from prison." *Id.* (quoting *Lee*, 502 F.3d at 450). The case at bar nearly mirrors the facts of *Evers*. Nichols faces 235 months of imprisonment before release, a sentence of such length that both the district court and Nichols himself have expressed doubt that he will live to see the end of it. Likewise, the probation department has discretion about whether and how to impose the polygraphs. In combination, these facts draw into question whether Nichols will ever actually be subject to polygraph testing.

The case at bar also involves an evolving technology, about which society's views are changing. This Court found this fact relevant to the issue of ripeness in *United States v. Lee*, and accordingly dismissed a defendant's challenge to a special condition requiring him to participate in a sex offender treatment program that may employ polygraph and penile plethysmograph testing. 502 F.3d at 450–51. The defendant there challenged the plethysmograph testing specifically. *Id.* In rejecting the challenge on ripeness grounds, this Court reasoned in part that "it

---

[2] "Penile plethysmograph testing is a procedure that involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *Lee*, 502 F.3d at 449 n.1 (quotation omitted).

is unclear whether, by the year [of the defendant's release], penile plethysmograph testing will still be used," as it may "be held to violate due process rights," its reliability may be "debunked," or "perhaps a less intrusive test [may] replace[] it." *Id.* Although polygraph testing is less controversial than plethysmograph testing, as with that technology, the future of polygraph testing is unknown, its legal status unsure, and its reliability in question. And polygraph testing may be less physically intrusive than plethysmograph testing, but it too "implicates significant liberty interests." *Id.* at 450 (citation omitted). Together, these cases suggest Nichols' challenge should be dismissed as unripe.

To be sure, this Court has also found analogous claims ripe. In an unpublished decision pre-dating *Lee* and *Evers*, this Court found the defendant's challenge to the imposition of a polygraph condition after release from a one-year prison sentence was sufficiently ripe because "the fact that defendant has not yet been subjected to testing does not erase the fact that the court has ordered his sentence and that there exists the threat of testing upon his release from prison." No. 98-5373, 1998 WL 939987, at *2 (6th Cir. Dec. 22, 1998) (unpublished table decision). In *Wilson*, as in the case at bar, the polygraph condition was imposed directly, rather than as a requirement of treatment. *Id.* at *1. However, unlike the defendant in *Wilson*, Nichols faces many years of incarceration—during which technology may evolve significantly—before polygraph testing may be imposed.

In *United States v. Dotson*, this Court contrasted the case before it with *United States v. Lee* in relevant fashion. *See* 715 F.3d 576, 588 n.9 (6th Cir. 2013). It noted that, whereas the *Lee* defendant's special condition of release required him to participate in a sex offender treatment program that "*may include* the use of a plethysmograph or polygraph," the *Dotson* defendant's condition said that he "*shall submit* to drug testing and drug treatment programs" directed by his

probation officer. *Id.* (quoting *Lee*, 502 F.3d at 448). Because the defendant would necessarily be required to submit to urinalysis testing, the Court found that these conditions were ripe for review, notwithstanding the fact that the defendant would have to serve a twenty-two-year prison sentence before they were imposed. *Id.* at 578, 588 n.9. In the instant case, Nichols' sentencing order states that he "must submit to periodic polygraph testing at the discretion of the probation officer." (Sent'g Order, R. 25 at PageID #448.) Unlike the defendant in *Dotson*, the officer's discretion means Nichols may never actually be subject to polygraph testing.

We find that the same considerations that led this Court to dismiss the defendant's challenges in *Lee* and *Evers*—the length of the sentence, the potential evolution of the technology, and the probation officer's discretion in imposing the testing—weigh in favor of dismissal here. *See Lee*, 502 F.3d at 450–51; *Evers,* 669 F.3d at 662. Altogether, our precedent indicates Nichols' challenge is not ripe for review.

Although Nichols' claim is not ripe now, he is not without avenues for review. When Nichols' claim is ripe, he may present it to the district court pursuant to 18 U.S.C. § 3583(e), as a request to modify the conditions of his supervised release. *See Lee*, 502 F.3d at 451; 18 U.S.C. § 3583(e).  As was the case for the defendant in *Lee*, the district court can then determine whether this condition is legally permissible and, if necessary, we can review its decision on appeal. 502 F.3d at 451.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.